No. 48,858

AGNES MCKNIGHT, Special Administratrix of the Estate of Ruby B. Conly, *Appellee*, v. ST. FRANCIS HOSPITAL AND SCHOOL OF NURSING, INC., A Corporation, *Appellant*.

(585 P.2d 984)

Opinion filed October 28, 1978.

*Robert L. Heath,* of Jochems, Sargent & Blaes, of Wichita, argued the cause and *Lawrence McDonough,* of the same firm, was with him on the brief for the appellant.

*Kenneth L. Ingham,* of Appling and Ingham, of Wichita, argued the cause and was on the brief for the appellee.

*Per Curiam:* This is an appeal from a judgment entered in favor of plaintiff and against defendant hospital in the amount of $9,000.00 following a bench trial in a malpractice action.

Ruby B. Conly (now deceased from causes unrelated to this action) was admitted to defendant hospital on October 8, 1973, after an episode in which she had become weak and had fallen in her home. Her physician, Dr. L. F. Podrebarac, made a diagnosis of hypertension, cardiovascular disease, and a mild cerebral accident on the left side. Ms. Conly was 75 years old at the time of her hospital admission. She had been hospitalized the previous month for similar problems. Dr. Podrebarac testified she was "weak as a cat" upon admission. During her hospitalization she was weak and nauseous. Upon her physician's instructions, she was provided with a walker in the hospital. X-rays were ordered of her colon and kidneys (intravenous pyelogram). The X-ray requisition form was filled out by a nurse in the employ of the defendant hospital. On the requisition form, space was allowed for "History" but no information pertaining to her history was provided. Preparatory for the radiological studies, Ms. Conly received four enemas during the previous evening. Two more enemas were administered at 5:00 A.M., on the day of X-rays. The patient complained of weakness and nausea. Dramamine was given for nausea at 1:30 A.M., the day of the X-rays. Ms. Conly was taken to the radiology department in a wheelchair and she walked to the X-ray table. Portions of the X-rays were made with the patient in a horizontal position. Then the table was tilted to a

vertical position. At this time Ms. Conly fell from the table and was injured. The fall occurred on October 22, 1973.

The defendant hospital contends that the evidence failed to establish that it breached any duty owed to Ms. Conly. The plaintiff contends and the trial court concluded that the hospital's failure to advise the radiology department of Ms. Conly's known weakened condition and history was the proximate cause of her fall and resulting injury.

The plaintiff did not present expert testimony that there is a duty to include this type of information on the X-ray requisition form or that the defendant hospital violated any duty in failing to provide the radiology department with such information. The radiologist in charge of taking the X-rays of Ms. Conly testified patient history is helpful but not indispensable, and that an orderly or two can stand near a weak patient to prevent falls.

A private hospital is bound to exercise toward a patient such reasonable care as the patient's known condition may require, the degree of care being in proportion to the patient's known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community. *Hiatt v. Groce,* 215 Kan. 14, Syl. 1, 523 P.2d 320 (1974); *Goheen v. Graber,* 181 Kan. 107, Syl. 3, 309 P.2d 636 (1957).

There is a common knowledge exception to the rule requiring expert medical testimony in malpractice cases. This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally. *Webb v. Lungstrum,* 223 Kan. 487, Syl. 3, 575 P.2d 22 (1978).

This "common knowledge exception" was stated in a different manner in *Hiatt* as follows:

"Expert medical testimony is ordinarily required to establish negligence on the part of either a physician or a hospital in their care and treatment of a patient, unless the medical procedures employed are so patently bad that negligence or lack of skill is manifest to a lay observer or other acts complained of could be regarded as negligent by applying the common knowledge and experience of mankind." (Syl. 2.)

A factually similar case is *Washington Hospital Center v. Butler,* 384 F.2d 331 (D.C. Cir. 1967). In *Washington,* the patient was injured in a fall from an X-ray table. She was a hospital patient and had experienced recent weakness, dizziness, and near-syncopal episodes. An intravenous pyelogram of her kidneys was ordered. She was moved to the radiology department in a wheelchair and walked to the table. After a series of X-rays in the horizontal position, her feet were placed against the footboard, she was asked if she could stand, replied she could, and was rotated into a vertical position. She was left standing without any artificial support while the technician went behind the shield to take the pictures. At this point the patient fell. The requisition form contained a space for patient's history. The form contained the notation "diabetic complications" but made no reference to the symptoms of weakness, dizziness, etc., recorded on her chart. Only the requisition form went with her to the radiology department. There was no evidence presented as to the medical practice in the community regarding the kind of information inserted in a radiological requisition or the precautions taken before vertical irradiation. The circuit court applied a rule that there was no need for expert testimony to determine that the acts or omissions of medical professionals can be found to fall below a standard of reasonably prudent care and held:

"The jury could have found that the hospital contributed to Mrs. Butler's tumble by failing to adequately inform the radiologists of the facts contained in its records suggesting a proneness to black out. While its nurse did insert in the requisition 'diabetes with complications' or 'diabetic complications', a notation the significance of which laymen would not be expected to comprehend on their own, the jury was at liberty to resort to the uncontradicted expert view expressed at trial that not all, but only some, diabetics are predisposed to loss of consciousness. Since the requisition at most communicated to the radiologists the fact that as a diabetic Mrs. Butler might or might not be so affected, while the chart contained data denoting plainly that she was, the jury could properly conclude that a reasonably prudent person would have been more specific than the hospital, and that had it been the fall might not have occurred." (384 F.2d at 337.)

This case at hand is a stronger plaintiff's case than *Washington* in that at least some history was provided in *Washington* that could have alerted the radiology department to the patient's increased risk of falling.

Where the trial court's findings are supported by substantial competent evidence they are conclusive on appeal. *McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, 561 P.2d 832 (1977);

*Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, 549 P.2d 927 (1976).

The common knowledge exception to the rule requiring expert testimony in malpractice cases was applicable in the case at hand. The trial court's finding of negligence on the part of the defendant hospital was supported by substantial competent evidence and will not be disturbed on appeal.

The judgment is affirmed.