(752 P.2d 129)

No. 60,707

ST. FRANCIS REGIONAL MEDICAL CENTER, INC., *Appellee,* v. RALPH HALE and ESTHER D. HALE, *Appellants.*

Opinion filed March 31, 1988.

*Calvin D. Rider* and *Robert C. Brown*, of Smith, Shay, Farmer and Wetta, of Wichita, for appellants.

*John Wachtel* and *J. Michael Morris*, of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellee.

Before REES, P.J., SIX and RULON, JJ.

RULON, J.: Ralph and Esther Hale (defendants) appeal from the district court's grant of summary judgment to St. Francis Regional Medical Center, Inc., (plaintiff) on defendants' counterclaim alleging negligence. Finding no error, we affirm.

The issue on appeal is whether the district court erred in dismissing the defendants' counterclaim because expert testimony was necessary to establish the hospital's standard of care, deviation from that standard of care, and causation of defendant Esther Hale's injury.

FACTUAL HISTORY

On January 13, 1984, Esther Hale was admitted to St. Francis Regional Medical Center (St. Francis) with a heart condition. She had bypass surgery on the 17th. During surgery, a vein was harvested from her left leg. The leg incision was sutured and the skin was closed with a staple gun. Esther first noticed problems with the incision several days after surgery. It did not seem to be healing properly, so she mentioned this to a nurse. The nurse's notes of January 18, 1984, indicate some "bloody oozing from the incision." Esther was dismissed January 25, 1984, and was instructed to consult with her family doctor regarding the leg problem.

The family doctor prescribed an ointment; however, the infection worsened. Antibiotics were also prescribed. In August 1984 she was examined by Dr. Newby, the doctor who performed the heart surgery, and he prescribed an ointment for the leg.

In the fall of 1984, Dr. Baker cultured the discharge from the sores on Esther's leg and diagnosed a staph infection. He prescribed another ointment, whirlpool treatment, and antibiotics. The infection appeared to clear up but, after several weeks without antibiotics, it worsened.

In February 1985, Dr. Schmeidler took an x-ray and discovered clips that had been left in the leg from the heart surgery. A lab report showed a staph infection. Continued treatment failed to remedy the condition and in the fall, Esther was referred to Dr. Ammar.

Dr. Ammar diagnosed cellulitis related to stitch or metal. Cellulitis is deep inflammation of the tissues just under the skin caused by infection with germs. On October 7, 1985, Dr. Ammar performed surgery in order to excise several small ulcers or sores. Several hemoclips were found and removed. On January 13, 1986, another surgical procedure was performed on the leg and several more hemoclips were removed. At the time of Esther's deposition in April 1986, her leg had not completely healed from the January surgery.

PROCEDURAL HISTORY:

In November 1984, ten months after the initial surgery, St. Francis filed a claim against the Hales, pursuant to Chapter 61, for collection of their unpaid hospital bill in the amount of $1,003.35. The Hales filed a counterclaim and the case was transferred to the Chapter 60 docket. The counterclaim alleged that the hospital's failure to provide sanitary and safe facilities was the cause of Esther's staph infection. The Hales subsequently amended their claim to include Dr. Newby as an additional party.

In April 1986, a discovery conference was held. The Hales were ordered to furnish their experts' reports by May 1, 1986. The Hales failed to name their experts and furnish reports. St. Francis filed a motion to preclude use of medical expert testimony. The district court denied the motion and granted the Hales until August 6, 1986, to produce expert reports. The Hales again failed to produce names of experts and copies of expert reports. The hospital filed a second motion to preclude use of expert testimony by the Hales. At the hearing on the motion,

counsel for the Hales stated he had been unable to locate an expert witness and consented to the granting of the hospital's motion.

Dr. Newby, who had performed the initial surgery, moved to be dismissed on the ground that the Hales had failed, as a matter of law, to prove a cause of action against him. The district court granted the motion.

St. Francis filed a motion for summary judgment and memorandum in support. The hospital argued that the Hales' claim should be dismissed for their failure to produce an expert to (1) establish the standard of care and (2) testify regarding causation. The Hales filed their response and argued that the "common knowledge" exception applied and no expert testimony was necessary to prove their cause of action.

The district court granted the hospital's motion for summary judgment, finding that the counterclaim involved the contraction of the staph infection and Esther's subsequent care and treatment. The court ruled that those issues were "not within the common knowledge exception to the rule requiring expert testimony to prove standard of care, deviation from standard of care and causation in medical malpractice cases."

The Hales filed a notice of appeal. The hospital's claim, however, had not been disposed of. This court issued a show cause order, requesting a journal entry setting out the disposition of the hospital's claim. The parties agreed to a dismissal without prejudice and filed a journal entry. This court ordered the appeal to proceed.

## SUMMARY JUDGMENT WAS PROPER

The rules governing the granting of summary judgment motions are well settled and need not be restated. See *Crooks v. Greene,* 12 Kan. App. 2d 62, Syl. ¶ 1, 736 P.2d 78 (1987).

To avoid summary judgment, the nonmoving party must establish each element of the cause of action:

"The plain language of K.S.A. 60-256(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Crooks v. Greene*, 12 Kan. App. 2d 62, Syl. ¶ 2.

In the present case, as in *Crooks v. Greene*, the plaintiffs made a "conscious legal decision to assume the position that expert testimony was not required to establish their claims." 12 Kan. App. 2d at 65. The trial court was then left with the legal issue of whether the Hales' claims fell within the common knowledge exception or whether their claims were beyond that exception and thus required expert testimony. See 12 Kan. App. 2d at 65-66. As this court stated in *Crooks*, "[i]f plaintiffs were wrong in their assertion that expert testimony was not needed, their claims failed for lack of evidence because they had not identified any expert testimony to support their claims." 12 Kan. App. 2d at 66.

In the present case, the district court ruled that expert testimony was necessary to establish standard of care, deviation from standard of care, and causation. The district court apparently reasoned that without that proof, the Hales would be unable to prove the essential elements of their negligence case and entered summary judgment in favor of the hospital. We agree.

In order to maintain a cause of action, the Hales need to establish three elements: (1) a duty on the part of the hospital to protect Esther from the contraction of the staph infection and subsequent problems; (2) failure on the part of the hospital to perform the duty; and (3) Esther's contraction of the infection and subsequent problems must have proximately resulted from the hospital's failures. See *Mellies v. National Heritage, Inc.*, 6 Kan. App. 2d 910, Syl. ¶ 1, 636 P.2d 215 (1981).

The Hales contend on appeal that "[a]s a matter of public policy and common sense, the testimony of an expert is unnecessary to prove that *physicians* must be responsible for removing all harm-producing foreign objects which they knowingly place inside a patient's body during an operation." (Emphasis supplied.) Appellants, however, have no cause of action against a physician. Dr. Newby, the physician performing the initial surgery is not a party to this appeal. Therefore, the Hales must establish the elements of their cause of action as to St. Francis.

The general duty of a private hospital was restated in *Mellies*:

" 'A private hospital is bound to exercise toward a patient such reasonable care as the patient's known condition may require, the degree of care being in proportion to the patient's known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community.' " 6 Kan. App. 2d at 913 (quoting *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. 632, 633, 585 P.2d 984 [1978]).

"The standard of medical and hospital care which is to be applied in each case is not a rule of law, but a matter to be established by the testimony of competent medical experts." *Chandler v. Neosho Memorial Hospital*, 223 Kan. 1, 5, 574 P.2d 136 (1977). In medical malpractice cases, not only is expert testimony generally necessary to establish the standard of care but also to support conclusions of causation. *Mellies*, 6 Kan. App. 2d 910, Syl. ¶¶ 3, 4.

The Hales assert that the hospital is liable for (1) its failure to provide safe and sanitary operating and recuperating facilities; (2) the failure of nurses to notify physicians of the swelling and infection; (3) the failure of the records to show the use of metal hemoclips; (4) its failure to culture, x-ray, and diagnose the infection at an earlier date; and (5) its failure to properly treat the infection after it was discovered. However, the Hales offered no expert testimony regarding the hospital's standard procedure or duty in these particular areas. Appellants rely upon the lay person's understanding of standard hospital procedure and the duties of a hospital versus the duties of the treating physician and staff nurses.

The Hales assert the "common knowledge" exception is applicable to this case:

"There is a common knowledge exception to the rule requiring expert medical testimony in malpractice cases. This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally." *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. 632, 633, 585 P.2d 984 (1978) (citing *Webb v. Lungstrum*, 223 Kan. 487, Syl. ¶ 3, 575 P.2d 22 [1978]).

In order to determine whether expert testimony was necessary under the facts of this case, we have reviewed numerous appellate decisions addressing the common knowledge exception. Testimony of lay persons was sufficient in the following cases: *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. at 635; *Hiatt v. Groce*, 215 Kan. 14, 21-22, 523 P.2d 320 (1974); *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 51, 510 P.2d 190 (1973); *Rule v. Cheeseman, Executrix*, 181 Kan. 957, Syl. ¶ 1, 317 P.2d 472 (1957); *Bernsden v. Johnson*, 174 Kan. 230, 238, 255 P.2d 1033 (1953).

The common knowledge exception was found not applicable and expert medical evidence was required to establish the cause of action in the following cases: *Webb v. Lungstrum*, 223 Kan. 487, Syl. ¶ 4, 575 P.2d 22 (1978); *Collins v. Meeker*, 198 Kan. 390, 399, 424 P.2d 488 (1967); *Crooks v. Greene*, 12 Kan. App. 2d at 66; *Crowley v. O'Neil*, 4 Kan. App. 2d 491, Syl. ¶ 6, 609 P.2d 198, *rev. denied* 228 Kan. 806 (1980).

In the present case, the hospital's duty is not so obvious as to fall within the common knowledge exception. The doctor was primarily responsible for the initial surgery. The hospital, however, is the only defendant and the hospital's duty to Esther needs to be established by competent medical experts. See *Chandler v. Neosho Memorial Hospital*, 223 Kan. at 5.

Nor does the cause of a staph infection appear so obvious that a lack of reasonable care by the hospital would be apparent to a lay person and within common knowledge and experience generally. Esther's treating physicians were unsure of the cause. Expert evidence is needed to establish whether some failure of the hospital proximately caused Esther to contract the infection. See *Mellies*, 6 Kan. App. 2d 910, Syl. ¶ 4.

In the district court, the Hales' claims failed for lack of evidence because no expert testimony established the essential elements of their case. The district court's determination that expert testimony was necessary to establish the hospital's standard of care, deviation from standard of care, and causation was correct.

Affirmed.