JUSTICE TRIEWEILER
concurring in part and dissenting in part.
I concur with that part of the majority opinion which holds that the doctrine of res ipsa loquitur is not applicable to the facts in this *249 case. I dissent from that part of the majority opinion which holds that expert testimony was necessary to establish the negligence of Kalispell Regional Hospital.
The majority correctly notes that in Montana we have recognized an exception to the usual requirement of expert testimony to prove a medical standard of care when the conduct complained of is readily ascertainable by a lay person. There are no cases in Montana where that exception has been applied. However, when we look to other jurisdictions which have applied the exception it is clear that it should be applied to the facts in this case.
For example, in McKnight v. St. Francis Hospital, Etc. (Kan. 1978), 585 P.2d 984, the issue was also whether intra-hospital communication had been adequate. In that case, plaintiff, an elderly lady, was admitted to the hospital by her physician with the diagnosis of hypertension, heart cardiovascular disease and a mild cerebral accident on the left side. She was in an extremely weak condition and her physician prescribed x-ray examination. That procedure required that a requisition form be filled out by a nurse who was employed by the hospital. That form provided a space for her history but no information pertaining to the plaintiff’s diagnosis or condition was provided. She was taken to the radiology department where she collapsed during a vertical x-ray exam because she was not provided with assistance to stand erect. The plaintiff contended, and the trial court agreed, that the hospital’s failure to advise the radiology department of the plaintiff’s weakened condition and history was the proximate cause of her fall and resulting injury. However, on appeal, the defendant contended that the plaintiff had a duty to present expert testimony regarding the hospital’s duty of care and that it did not do so. Of particular relevance to this case was the hospital’s contention that:
The plaintiff did not present expert testimony that there is a duty to include this type of information on the X-ray requisition form or that the defendant hospital violated any duty in failing to provide the radiology department with such information.
McKnight, 585 P.2d at 985.
However, on appeal, the Supreme Court of Kansas set forth a more complete explanation of the “common knowledge” exception to the rule requiring expert testimony in malpractice cases and held that expert testimony was not required in that case. In discussing the rule the court in McKnight stated:
*250 There is a common knowledge exception to the rule requiring expert medical testimony in malpractice cases. This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally. Webb v. Lungstrum, 223 Kan. 487 ... 575 P.2d 22 (1978).
This “common knowledge exception” was stated in a different manner in Hiatt [v. Grace, 215 Kan. 14, 523 P.2d 320 (1974)] as follows:
Expert medical testimony is ordinarily required to establish negligence on the part of either a physician or a hospital in their care and treatment of a patient, unless the medical procedures employed are so patently bad that negligence or lack of skill is manifest to a lay observer or other acts complained of could be regarded as negligent by applying the common knowledge and experience of mankind.
The common knowledge exception to the rule requiring expert testimony in malpractice cases was applicable in the case at hand....
McKnight, 585 P.2d at 986-87. In accord is Washington Hospital Center v. Butler (U.S. App.D.C. 1967), 384 F.2d. 331.
As in the McKnight case the issue in this case was whether the information included in the hospital’s internal requisition form provided sufficient safeguards to the plaintiff.
Marilyn Meyers was the circulating nurse in charge of Kalispell Regional Hospital’s operating room who ordered the plaintiff’s prosthesis. She filled out the order form which was sent to the purchasing department which placed the order with the company which manufactured the prosthesis. However, nowhere in the purchasing form was the size of the prosthesis indicated even though she acknowledged that the prosthesis came in various sizes.
Jayne Wangerin was the scrub nurse whose responsibility it was to gather the instruments and supplies that would be necessary for plaintiff’s surgery and bring them to the operating room. When plaintiff’s prosthesis arrived the day before or the morning of his operation, she checked the contents of the container in which it was shipped against the information on the packing slip which was sent *251 with the package. She also checked the contents against the manufacturer’s catalog which indicated those parts that should come with that prosthesis. However, at no time did she determine from either Doctor Laidlaw, from Marilyn Meyers or from the purchasing department what the appropriate size of the prosthesis should be.
The hospital acknowledged by the procedure that it employed that some inspection of what was sent by the manufacturer was necessary. The people who checked what was sent also acknowledged that the prosthetic device that was received comes in various sizes. With this information it does not require an expert to conclude that any meaningful inspection would have to determine whether the appropriate size was sent. Expert testimony should not be necessary to establish that the hospital was negligent when it failed to consider whether the parts shipped were the appropriate size until the plaintiff lay on the operating table with an open incision.
It does not take a rocket scientist to figure out that if it is reasonable to inspect prosthetic devices that are shipped to the hospital; if an important characteristic of the prosthetic device is its size; and if the operating physician relies on confirmation that the appropriate prosthetic device has been sent before he opens up a patient for implantation of that device, then a reasonable inspection should include a determination that the correct size has been received.
Just as in the cited cases, this case involves an internal communication at the hospital in the form of a requisition sheet which did not include adequate information and therefore communications within the hospital were inadequate to assure the plaintiff’s safety. That fact can be deduced from the common knowledge possessed by lay people and does not require expert testimony for its proof.
For these reasons, I dissent from the majority opinion. I would reverse the summary judgment of the District Court and remand this case to the District Court for a trial to determine whether or not Kalispell Regional Hospital was negligent when it purchased the wrong sized prosthetic device for implantation into the patient’s hip and did not let his treating physician know until after plaintiff’s surgery had begun.