(146 P.3d 1102)
No. 95,572

MARY J. PERKINS, *Appellant,* v. SUSAN B. ALLEN MEMORIAL
HOSPITAL, *Appellee.*

Opinion filed December 1, 2006.

*Arden J. Bradshaw,* and *Troy H. Gott,* of Patterson, Gott & Burk, of Wichita, for appellant.

*Harold S. Youngentob,* and *Nathan D. Leadstrom,* of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

RULON, C.J.: Plaintiff Mary J. Perkins appeals the district court's order granting summary judgment to defendant Susan B. Allen

Memorial Hospital due to the plaintiff's decision not to present expert testimony to establish the applicable standard of care. We affirm in part, reverse in part, and remand for further proceedings.

On February 20, 2003, the plaintiff went to Susan B. Allen Memorial Hospital for a scheduled radiology examination of the plaintiff's lower digestive system. Richard Kerwood began the examination, which involved a series of x-ray films taken 15 to 30 minutes apart. Shortly after the examination had begun, the plaintiff complained her back hurt from lying on the examination table. Consequently, Kerwood agreed to allow the plaintiff to remove herself from the table between exposures to rest in a chair located in the examination room.

Throughout the procedure, Kerwood left the examination table at its lowest position, and the plaintiff could easily touch the floor when she was seated at the edge of the table. The plaintiff had taken x-rays before and had frequently gotten down from the examination table without assistance. In fact, the plaintiff had previously undergone tests similar to the examination administered in this case.

Before the examination had been completed, Kerwood took a break and was replaced by Brandy Book. Kerwood did not communicate with Book about leaving the table in the lowest position or that the plaintiff was sitting in the chair between films. When another film needed to be taken, Book positioned the plaintiff on the x-ray table and raised the table. Book did not inform the plaintiff that Book raised the table. Book then left the room to develop the x-ray film and left the plaintiff on the raised table. Book claims she told the plaintiff to remain on the table until Book returned. The plaintiff did not recall Book telling her to remain on the table and doubted the veracity of Book's claim. After Book left the room, the plaintiff sat up momentarily on the edge of the table. Then, the plaintiff attempted to leave the table, fell to the floor, and fractured her hip.

Ultimately the plaintiff filed suit, claiming the defendant failed to use reasonable care to ensure the plaintiff's safety on the hospital premises and deviated from accepted standards of practice in the plaintiff's treatment. The defendant alleged the plaintiff's petition

failed to state a claim upon which relief could be granted and affirmatively raised plaintiff's negligence as a defense.

Arguing that her claims should be characterized as premises liability claims, the plaintiff expressed her intention to proceed to trial without expert medical testimony to establish the appropriate standard of care and causation. Consequently, the defendant filed a motion for summary judgment, claiming expert testimony is required to establish the proper standard of care in any medical malpractice case unless the negligence alleged falls within a common knowledge exception. The plaintiff argued the common knowledge exception applied in this case, making the use of expert testimony unnecessary to establish a prima facie case of negligence.

Noting the plaintiff's claims involved allegations the hospital breached its duty to the plaintiff, the district court found the plaintiff's claims alleged medical malpractice. Because the plaintiff determined not to call an expert to establish the proper standard of care, the court reasoned the claims could only survive if the claims fell within the common knowledge exception. Finding the common knowledge exception did not apply to the facts of the case, the district court granted the defendant's motion for summary judgment.

## Summary Judgment

When a motion for summary judgment is filed, the party against whom the motion is filed must demonstrate evidence establishing a material dispute of fact. To constitute a material fact, disputed evidence must be relevant to conclude a legal issue pertinent to the resolution of the case. In reviewing a summary judgment motion, the district court is required to resolve all facts and inferences to be reasonably drawn from the evidence in favor of the nonmoving party. If a review of the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate no genuine issue as to a material fact, summary judgment is appropriate. However, where reasonable persons could reach different conclusions based upon the evidence, summary judgment must be denied. On appeal, this court applies the same standard of review as the district court. *Watkins v. McAllister*, 30 Kan. App. 2d 1255, 1257, 59 P.3d

1021 (2002) (citing *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 [2000]).

Although the plaintiff identified four acts of negligence which allegedly contributed to her hip injury, her allegations essentially assert two legal claims: (1) the defendant's employees, Kerwood and Book, negligently failed to establish and implement a consistent routine; and (2) Book negligently failed to warn the plaintiff of the danger created by the raised x-ray table. The plaintiff argues an assessment of both claims is well within the knowledge of the average juror and the district court unduly restricted the application of the common knowledge exception to the expert testimony requirement in medical malpractice cases.

## Common Knowledge Exception

Both parties devote a large portion of their written arguments to the proper scope of the common knowledge exception. The plaintiff primarily contends the district court confused the principle of res ipsa loquitur with the common knowledge exception. This issue involves a question of law, over which this court possesses unlimited review. *Maunz v. Perales*, 276 Kan. 313, 320, 76 P.3d 1027 (2003).

Medical malpractice is negligence of a healthcare professional in the diagnosis, care, and treatment of a patient. *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978). A medical malpractice claim is an action for professional negligence, requiring proof of "(1) the existence of a duty; (2) breach of that duty; (3) injury; and (4) a causal connection between the duty breached and the injury suffered." *Watkins*, 30 Kan. App. 2d at 1258. Generally, expert testimony is required to establish the appropriate standard of care and causation because such matters are outside the knowledge of the average person without specialized training. *Hare v. Wendler*, 263 Kan. 434, 440, 949 P.2d 1141 (1997); *Watkins*, 30 Kan. App. 2d at 1258.

However, in certain medical malpractice claims, expert testimony is not required because the standard of care and causation are within the common knowledge of a layperson. "This common knowledge exception applies if what is alleged to have occurred in

the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally." *Webb*, 223 Kan. at 490.

The district court's articulation of the exception was correct. Though variously stated, the common knowledge exception to the expert testimony requirement has three essential elements: (1) the plaintiff has asserted a claim of medical malpractice; (2) the care or result of the care is patently bad; and (3) a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony. See, *e.g.*, *Hare*, 263 Kan. at 442; *Webb*, 223 Kan. at 490; *Hiatt v. Groce*, 215 Kan. 14, 19, 523 P.2d 320 (1974).

As a result, the exception is extremely limited. See *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. 632, 634-35, 585 P.2d 984 (1978) (applying exception when weakened patient fell onto the floor during an x-ray examination when the table was tilted vertically); *Hiatt*, 215 Kan. at 21 (applying exception when plaintiff's mother had experience as a midwife and testified concerning her own pregnancy); *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 51, 510 P.2d 190 (1973) (applying exception when nursing staff failed to attempt to contact doctor after initial attempt); *Rule v. Cheeseman, Executrix*, 181 Kan. 957, 963, 317 P.2d 472 (1957) (applying exception when sponge was left in patient after surgery); *Bernsden v. Johnson*, 174 Kan. 230, 236-37, 255 P.2d 1033 (1953) (applying exception when post-surgery choking was caused by metal disc lodged in patient's throat); *Schwartz v. Abay*, 26 Kan. App. 2d 707, 995 P.2d 878 (1999) (applying exception where surgeon removed 60% of the wrong vertebral disc).

The plaintiff contends the facts of *McKnight* are analogous to the facts of her case. However, as noted by the district court, *McKnight* is distinguishable. In *McKnight*, an elderly woman was admitted to the hospital following a fall in her home. Her doctor indicated the patient suffered from hypertension, cardiovascular disease, and a mild cerebral accident. The medical chart noted the

patient was "weak as a cat." The doctor ordered an x-ray examination, and the nurse completing the requisition form failed to provide any of the patient's medical history, which included a number of falls. Prior to the examination, the patient was given four enemas. The plaintiff was wheeled to the radiology department, but she walked to the x-ray table without assistance. The plaintiff was provided no artificial support or restraints, and, when the table was tilted vertically, the plaintiff fell to the ground, sustaining injury. 224 Kan. at 632-33.

Whereas the hospital personnel in *McKnight* basically dumped a frail patient onto the floor, the plaintiff's injury in the present case is not as clearly related to the negligence of the defendant's personnel. Although Book raised the x-ray table (allegedly without the plaintiff's knowledge) such conduct did not jettison the plaintiff from the table. Furthermore, unlike *McKnight*, the plaintiff has not alleged that her injury was the result of the hospital personnel's failure to identify and care for a special medical condition. Rather, the alleged negligence here was due in part to the defendant's attempts to accommodate the patient's need to get off the x-ray table. None of the alleged negligence in this case rises to the level of being patently bad. The district court properly found the common knowledge exception did not apply.

## Malpractice vs. Ordinary Negligence

However, our conclusion that the common knowledge exception is not applicable does not end the inquiry. Not every claim for negligence against a healthcare provider constitutes malpractice. See *Walters v. St. Francis Hosp. & Med. Center, Inc.*, 23 Kan. App. 2d 595, 932 P.2d 1041, *rev. denied* 262 Kan. 969 (1997) (permitting suit for premises liability against hospital where visitor passed out after witnessing emergency procedure on his fiance). The difference between a medical malpractice claim and a claim for other types of negligence depends entirely on the nature of the alleged wrongful conduct.

Here, before considering whether the common knowledge exception was applicable, the district court should have determined

whether the plaintiff's claims of negligence involved professional judgment in the diagnosis, care, or treatment of the patient.

## Negligence Claim Concerning Examination Routine

The plaintiff alleged that Kerwood, an employee of the defendant, was negligent in failing to advise Book of the plaintiff's routine of removing herself from the x-ray table to sit in a chair between exposures. The plaintiff similarly contended that Book, an employee of the defendant, was negligent in failing to question Kerwood when she assumed care of the plaintiff.

Consequently, the nature of the plaintiff's negligence claim is essentially the defendant's failure to implement a consistent routine for dealing with patients during a radiology examination of the digestive tract. The standard of care in such a claim might be governed by a policy implemented by the hospital, but the parties do not dispute the defendant has not implemented any policies governing a patient's ability to leave an x-ray table between exposures.

Therefore, the technicians' failure to implement a common procedure or routine or to communicate such is based entirely upon the training and judgment of an x-ray technician regarding the appropriate care and treatment of a patient. As the standard of care necessarily involves the professional judgment of an x-ray technician, the claim for negligence constitutes a claim for malpractice. Expert testimony is necessary to establish the applicable standard of care and causation unless the negligence involved in the conduct is apparent to a person without medical training. The duty to implement a particular routine during an x-ray examination or the duty to communicate a routine previously implemented is not a matter about which the average person possesses knowledge. Additionally, the facts demonstrate no immediately identifiable causal connection between the alleged negligence and the plaintiff's injury. As such, the common knowledge exception does not apply to relieve the plaintiff from the burden of obtaining expert testimony. See *Hare*, 263 Kan. at 440-41.

The defendant presented letters of several experts indicating the technicians did not violate the pertinent standard of care by establishing different routines with the plaintiff during the course of the

examination. The plaintiff refused to present conflicting expert testimony establishing the technicians' proper standard of care and causation. As a result, the evidence, taken in a light most favorable to the plaintiff, does not establish any disputed material facts regarding the technicians' failure to implement a common examination routine with the plaintiff. The district court properly granted summary judgment on this claim. See *Watkins v. McAllister*, 30 Kan. App. 2d at 1257.

## Failure to Warn

The other allegations raised by the plaintiff concern Book's raising the x-ray table without warning the plaintiff of the danger attending the plaintiff's attempt to remove herself from the table when Book left the room to develop the x-ray film.

The plaintiff has not alleged the defendant was negligent in raising the x-ray table for the examination, nor has the plaintiff contended Book was negligent in failing to assess the plaintiff's weakened condition. The plaintiff has alleged that Book was negligent in raising the x-ray table without the plaintiff's knowledge and failing to warn the plaintiff of the unsafe condition created by the raised table. The duty to warn a plaintiff of an unsafe condition does not involve specialized medical knowledge or diagnosis; it is akin to a premises liability claim.

This court has previously considered a premises liability claim in the context of a visitor to the emergency room who fainted after witnessing an emergency medical procedure on his fiance. Relying upon the Restatement (Second) of Torts § 341A (1964), this court noted that the owner of a premises is subject to liability for physical harm to an invitee caused by a failure to conduct activities with reasonable care for the invitee's safety if the invitee would not likely discover or realize the danger or would likely fail to protect himself or herself against the danger. *Walters*, 23 Kan. App. 2d at 598.

By raising the x-ray table, Book created a danger to the plaintiff. Although the defendant produced evidence indicating the plaintiff should have been aware of the danger posed by the raised table, the plaintiff's testimony creates a dispute on a material fact. The plaintiff claims she could not hear the table being raised; she con-

tends she did not hear Book's order to remain on the table; and the plaintiff stated she did not realize the table was elevated until it was too late to stop herself from sliding off the edge.

Under these circumstances, the plaintiff was not required to present expert testimony establishing a standard of care. A jury could easily have determined whether the plaintiff knew or should have known of the danger attending the raised examination table before she attempted to remove herself from it. The jury could weigh the testimony of the parties concerning notification or warning of the danger. However, disputed testimony on a material point precludes summary judgment. See *Watkins*, 30 Kan. App. 2d at 1257.

## Conclusion

The district court properly classified the plaintiff's negligence claim based upon the technicians' failure to communicate as a medical malpractice claim requiring expert testimony to establish the standard of care and causation. Because the plaintiff decided not to present any expert testimony, the court properly granted summary judgment in favor of the defendant on this claim. In contrast, the district court erred in classifying the claim involving the "failure to warn" as a medical malpractice claim requiring expert testimony. Summary judgment on the "failure to warn" claim was improper.

Affirmed in part, reversed in part, and remanded for further proceedings.