NOT DESIGNATED FOR PUBLICATION

No. 113,430

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JACLAN LANAM,
*Appellant*,

v.

PROMISE REGIONAL MEDICAL CENTER-HUTCHINSON, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 8, 2016.
Affirmed.

*Melinda G. Young* and *Matthew L. Bretz*, of Bretz & Young, L.L.C., of Hutchinson, for appellant.

*Rachel E. Lomas*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*: Dropping a patient onto a driveway is one thing, but claiming a nurse assistant must examine a patient's chart and make an informed professional decision about how many people it will take to safely transfer a patient to her car is another. Everyone knows you should not let someone leaving the hospital after a knee operation drop to the pavement. That is a matter of ordinary negligence. On the other hand, only experts in the medical field can legally establish the standard of care a nurse assistant must follow in safely transferring a patient from the hospital to her car. Such a professional standard of care is not common knowledge.

1

Jaclan Lanam had her right knee replaced at Promise Regional Medical Center-Hutchinson, Inc., in October 2009. She was discharged from the hospital 3 days later. Kelly Zoglman, a certified nurse assistant, transferred Lanam from her hospital chair to a wheelchair. Zoglman then rolled Lanam out to the car waiting to take her home. Zoglman was the sole assistant assigned to transfer Lanam from her wheelchair to the car. What happened next is disputed.

Lanam claimed that Zoglman used a restraint belt to help her stand up next to the car. Then, Zoglman began talking to other people while Lanam was standing up next to the car. After some time, Zoglman said, "[O]kay," which Lanam understood to be her cue to turn and sit in the car. Lanam turned to sit, but Zoglman let go of the restraint belt and Lanam fell to the ground. Zoglman said, "I knew I should have brought somebody else with me." Lanam suffered a variety of injuries because of the fall.

For her part, Zoglman claimed that she had explained to Lanam that she would help her scoot back towards the car, sit her rear on the car seat, and then Zoglman would swing Lanam's legs into the car and turn her to the position she would ride in the car. Instead, Lanam lifted her left leg, placing all of her weight onto the right knee that was the subject of surgery, and then she fell. Zoglman testified that she did not use a restraint belt.

In order to understand the issues raised in this appeal, we must recount, in some detail, the pretrial conference order, the denial of the hospital's summary judgment motion, the court's limiting order, and Lanam's opening statement. They illustrate the dramatic shift in the claims brought by Lanam.

*We repeat the agreed pretrial conference order.*

A pretrial order reflects the refinement of the parties' issues and contentions. The court entered an agreed pretrial conference order in July 2013. Both sides listed their contentions:

> "Plaintiff was an elderly woman who had a total knee replacement surgery at Defendant's facility. Following the knee replacement a single CNA took Plaintiff to the car even though the CNA knew and admitted after the fall that she should have taken a second person to assist in the transfer. The sole CNA got Plaintiff to her feet and then made her stand there for a number of minutes while she carried on a conversation with someone else, and then let go of the restraint and dropped Plaintiff to the ground.
>
> "Defendant argues that Plaintiff needs an expert in the obvious. Plaintiff submits that no expert testimony is necessary to establish that you should not drop nitroglycerine, a baby, or an elderly woman just out of knee replacement surgery, and that no expert testimony is necessary given the hospital employee's admission that she knew she should have brought someone with her to help with the transfer."

*Before trial, the court denied the hospital's motion for summary judgment.*

Lanam filed suit against the hospital for negligence. The hospital moved for summary judgment seeking dismissal of the case because Lanam had failed to designate a standard of care expert. In her response, Lanam contended that she needed no expert because it is common knowledge that one should not drop an elderly woman who has just had knee replacement surgery and that a second person should have assisted with the transfer.

At the hearing on the motion, Lanam's counsel contended that Lanam

> "didn't fall because of the way that she was placed in the car. Rather the testimony is that the CNA let go, let go of the Gait belt. It wasn't the technique being carried out, rather

3

she just let go and dropped Miss Lanam . . . . [T]his particular CNA in her sound judgment made an admission after the fact where she said that she knew that she should have brought someone with her to help with the transfer."

The district court denied the motion for summary judgment, concluding that "[i]f the jury finds the facts as alleged by the Plaintiff (CNA dropping the Plaintiff), then the 'common knowledge' exception would apply."

*The court issued an order in limine.*

Just before the trial started, the district court issued a limiting order and ruled that at trial Lanam could not refer to the hospital's policies and procedures as "safety rules." The district court further ruled that evidence of whether Lanam, within 2 hours of her discharge, "had received insulin, was under the influence of any type of drugs, and if she is, in fact, diabetic whether she had eaten or not" was admissible. The district court ruled such evidence was relevant "to show her ability to comprehend what was going on."

*The court stopped the trial after Lanam's opening statement.*

Trial commenced the same day. Lanam's counsel gave an opening statement which began:

"[W]hat brings us to this courtroom today . . . are the safety requirements that protect patients when they go to the hospital; requirements that protect patients like Miss Lanam only if they're followed.
". . . If it's safer to have two people transfer a lady who has just had a knee replacement then that's how it needs to be done."

Highly summarized, counsel described Lanam's condition on the day of discharge: for pain, she was given hydrocodone in the morning and percocet in the afternoon; she

4

was measured by physical therapy to have zero degrees of extension, meaning the leg would go all the way straight, but only 67 degrees of flexion; she was not at full strength; 3 days after surgery, she could walk 130 feet with a front wheel walker; and her pain was 10 out of 10.

Counsel also told the jury that before moving the patient, Zoglman did not look at Lanam's patient chart to see what medications she had taken, her strength, physical therapy requirements, or pain level. The hospital made no objection during Lanam's opening statement. After the hospital gave its opening statement, the jury was dismissed for the day. Afterwards, the hospital argued that Lanam had violated the court's in limine order by using the term "safety requirements" in her opening statement.

The next morning, the court ruled that Lanam's use of the term "safety requirements" indeed violated the order in limine, but that there was no contemporaneous objection by the defense. The district court went on to state that the case presented in Lanam's opening statement was not one of simple negligence but, rather, one of medical malpractice. The case being presented now was that the hospital had violated its own policies and procedures in handling a specific patient, which would require expert testimony to prove. The court ruled that whether Zoglman was required to know Lanam's medical condition was a medical issue requiring expert testimony. The district court granted a mistrial and ordered the parties to brief how to proceed next.

At a later hearing, the hospital contended that the case should be dismissed because Lanam's case had become one requiring expert testimony. Ultimately, the district court dismissed the case, ruling Lanam had shifted her claims to violations of procedures and policies:

> "Plaintiff's contention is that a CNA should have been aware of the detailed medical
> condition of Plaintiff upon her release and as a result also should have known she needed

5

a second person to assist in the transfer. Plaintiff argued and is arguing policies, procedures and safety requirements were not met by the employee of [the hospital].

"Defendant Promise intended to utilize an expert witness to establish the actions of the CNA were proper. Plaintiff has no expert to establish the actions of the CNA were negligent. The Court has considered this matter at great length. Plaintiff goes far beyond simply arguing the CNA dropped Plaintiff in the parking lot. The Court can come to no other conclusion in its mind other than the fact the case Plaintiff attempted to present and desires to present to the jury is a medical malpractice action which requires expert medical testimony."

To us, Lanam contends that the district court erred in dismissing the case because expert testimony was not required to show that Zoglman was negligent by dropping her after she just had a knee replacement. Also, Lanam contends that she did not violate the district court's order in limine by referring to the hospital's policies and procedures as "safety requirements" in her opening statement. Lanam also includes a one-sentence argument in her brief that any objection was waived because the hospital did not object during her opening statement. We turn to the first issue.

*We see no error in the court's dismissal of Lanam's case.*

Because the hospital filed its motion for immediate disposition after opening statements were made in this case, more than 30 days after the close of discovery, the standard used for deciding motions for judgment as a matter of law is appropriate. A trial court's decision on a motion for judgment as a matter of law is reviewed under the former directed verdict standard of review. See K.S.A. 2014 Supp. 60-250; *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 706, 317 P.3d 70 (2014). That is to say, the trial court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. And, where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. We, as the appellate court must apply a similar analysis when reviewing the grant

6

or denial of a motion for judgment as a matter of law. *City of Neodesha v. BP Corporation*, 295 Kan. 298, 319, 287 P.3d 214 (2014). We will employ this standard of review.

At this point, before we rule on the merits, it is helpful to review the general needs for expert testimony. Generally, expert testimony is required to show a deviation from the standard of care if the subject matter falls outside the common, everyday knowledge of the average juror. *Schlaikjer v. Kaplan*, 296 Kan. 456, 464, 293 P.3d 155 (2013).

The primary purpose of expert testimony is to establish the professional community standards for the benefit of the trier of fact when the facts are somewhat alien in terminology and the technological complexities would preclude an ordinary trier of fact from rendering an intelligent judgment. *Juhnke v. Evangelical Lutheran Good Samaritan Society*, 6 Kan. App. 2d 744, 748, 634 P.2d 1132 (1981).

When questions of professional judgment are being considered, expert testimony is required to establish the standard of care for the particular condition and symptoms. For example, in *Tudor v. Wheatland Nursing*, 42 Kan. App. 2d 624, 632-33, 214 P.3d 1217 (2009), *rev. denied* 290 Kan. 1105 (2010), the court ruled that a claim that a nursing home was negligent in failing to monitor a patient around food when the patient had a history of difficulty swallowing, regurgitating, and choking required expert testimony to establish the standard of care in light of the patient's "particular conditions and symptoms."

*Expert testimony is not always necessary.*

In cases where negligence is obvious to a lay person, the common knowledge exception applies. For example, if a physician leaves gauze, a sponge, or any metallic object in a patient after a surgical procedure, no expert testimony is required to establish

7

that the physician did not exercise reasonable care. See *Rule v. Cheeseman*, *Executrix*, 181 Kan. 957, 963, 317 P.2d 472 (1957); *Bernsden v. Johnson*, 174 Kan. 230, 238, 255 P.2d 1033 (1953); *Russell v. Newman*, 116 Kan. 268, 270, 226 P. 752 (1924). Similarly, no expert testimony is required to establish that a physician, who admittedly operated on the wrong disc in a patient's back, removing 60 percent of the healthy disc, deviated from the standard of care. *Schwartz v. Abay*, 26 Kan. App. 2d 707, 711, 995 P.2d 878 (1999). And, a lay person could conclude that failure to secure the presence of a doctor when a patient's condition deteriorated to the point that the patient was deemed "'critical'" was negligent. *Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 51, 510 P.2d 190 (1973). Moreover, a claim that a nursing home was negligent by failing to prevent injury to a patient caused by another patient with known violent tendencies does not involve any technical complexities outside of the common knowledge of an average juror. *Juhnke*, 6 Kan. App. 2d at 748.

The "common knowledge" exception to the expert testimony requirement recognizes that medical professionals do not have

> "a monopoly on common sense, and the [expert testimony] rule is limited to those matters clearly within the domain of medical science. When, in a given case, the diagnosis, treatment or care of a patient brings such bad results that lack of reasonable care would be apparent, using the common everyday knowledge of persons generally, such facts may be testified to by persons other than physicians." *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978).

But use of the common knowledge exception is extremely limited. *Perkins v. Susan B. Allen Memorial Hospital*, 36 Kan. App. 2d 885, 889, 146 P.3d 1102 (2006), *rev. denied* 283 Kan. 931 (2007). Whether the common knowledge exception applies to a particular set of facts is a question of law. *Hubbard v. Mellion*, 48 Kan. App. 2d 1005, 1015, 302 P.3d 1084, *rev. denied* 298 Kan. 1202 (2013).

8

*Expert testimony is not required for a simple fall case.*

In simple fall cases, the common knowledge exception often applies. Expert testimony was not necessary to establish the standard of care when a 75-year-old patient in a frail physical condition fell while walking from his hospital bed to the bathroom and the plaintiff alleged negligent supervision by the hospital. See *Veesart v. Community Hospital Association, Inc.*, 211 Kan. 896, 896, 508 P.2d 506 (1973). And, negligence was apparent when a hospital permitted an unconscious patient just out of surgery and under the influence of sedation and anesthetics to fall from a hospital bed. *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 327, 335-36, 362 P.2d 841 (1961).

Similarly, no expert testimony was required when a patient fell from an x-ray table when the patient's weakened condition was known to the hospital but not communicated to the radiology department. *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. 632, 633-35, 585 P.2d 984 (1978). In *McKnight*, the plaintiff was hospitalized after she had become weak and fallen in her home. She was "'weak as a cat'" upon admission. 224 Kan. at 632. Her doctor failed to provide the radiology department with her medical history. She was taken to the radiology department in a wheelchair, but she walked to the X-ray table. X-rays were taken with the plaintiff in a horizontal position. Then the X-ray table was moved to a vertical position and the plaintiff fell from the table. The plaintiff did not present expert testimony that the hospital had a duty to advise the radiology department of the plaintiff's weakened condition. The court concluded that the jury could have found that the hospital's failure to notify the radiology department was negligent without expert testimony. 224 Kan. at 634-35.

*It is clear that after her opening statement, Lanam's case was no longer a simple fall case.*

The details expose Lanam's shift in claims. During her opening statement and in her posttrial brief and response to the hospital's motion for dismissal, Lanam contended:

- Zoglman made Lanam stand next to her car for several minutes while Zoglman talked to someone else.
- Zoglman let go of the restraint belt and dropped Lanam.
- Zoglman did not look at Lanam's patient chart before moving her.
- On the day of discharge, Lanam was given hydrocodone in the morning and percocet in the afternoon for pain; she was measured by physical therapy to have zero degrees of extension, meaning the leg would go all the way straight, but only 67 degrees of flexion; she was not at full strength; 3 days after surgery, she could walk 130 feet with a front wheel walker; her pain was 10 out of 10; and she was "'out of it' due to drugs and not being fed and not getting insulin."
- Two people, rather than one, should have assisted Lanam into her car.
- The hospital's policies and procedures were not followed.

If Lanam's case was simply that Zoglman assisted Lanam to her car, negligently got distracted, and let go of the restraint belt and caused Lanam to fall to the ground, then her case would not require expert testimony. There are no technical complexities or questions of medical science in such an argument. See *Juhnke*, 6 Kan. App. 2d at 748. Lack of reasonable care would be apparent if the jury believed Lanam's version of the events. This version of Lanam's case would be comparable to *McKnight*, where our Supreme Court held that a jury could infer negligence when a patient in a weakened condition fell off an X-ray table. See 224 Kan. at 634-35. Here, a juror could conclude

10

that it was negligent for a CNA to let go of the restraint belt on a patient who just had knee replacement surgery without expert witness testimony.

But the case that Lanam made during her opening statement, and continued to argue to the district court after the mistrial, was not so simple. Lanam contended that Zoglman had a duty to review Lanam's patient chart and discover her detailed medical condition before moving her. Likewise, whether a CNA has a duty to review a patient's chart before taking that patient to her car is outside common knowledge. Here, Zoglman's failure to read Lanam's patient chart was not so obvious an omission that it falls within the common knowledge exception. And that is the point—whether such duties exist is not a matter of common knowledge. Establishing the existence of such duties would require expert testimony.

Lanam goes on to argue that her specific medical condition on the day of discharge was the determinative factor as to the number of CNAs needed to put her in her car. Whether a person with 0 degrees of extension, 67 degrees of flexion, not at full strength, and pain 10 out of 10 requires the assistance of one CNA or two CNAs to get into a car is not a matter of common knowledge.

As the cases state, when professional judgment must be rendered based on a patient's particular conditions and symptoms, then expert testimony is required to determine whether the professional deviated from the appropriate standard of care. *Tudor*, 42 Kan. App. 2d at 632-33. In *Tudor*, this court rejected the plaintiff's contention that a layperson's life experience with assisting elderly relatives with daily activities would equate to an understanding of the level of care required for a patient with the plaintiff's particular conditions and symptoms. 42 Kan. App. 2d at 632-33. Here, a layperson's life experience helping elderly relatives into cars does not equate to an understanding of the level of care required for a patient with Lanam's specific condition.

11

In *Cunningham v. Riverside Health System, Inc.*, 33 Kan. App. 2d 1, 2, 99 P.3d 133 (2004), this court held that expert testimony was required to establish the standard of care for moving a patient with a complex medical situation and a preexisting condition of osteoporosis. In *Cunningham*, a nursing assistant helped the plaintiff onto her bed after knee surgery. The plaintiff was diagnosed with "'advanced degenerative joint disease'" and "'severe osteoarthritis with chronic synovitis and synovial cyst with areas of bone reabsorption, left knee.'" 33 Kan. App. 2d at 3. The plaintiff asked the nursing assistant to move her leg into the position recommended by her physician. The plaintiff claimed that the nursing assistant "'gave too hard of a tug,'" raised her leg off of the bed, and she felt her leg "'crack'"; the nursing assistant then dropped the plaintiff's leg onto the bed and left the room. 33 Kan. App. 2d at. 3. The *Cunningham* court held that expert testimony was required to establish the appropriate standard of care for the plaintiff's condition—that she was recovering from knee replacement surgery, had a weakened bone condition, and had been given a physician's instructions as to the positioning and movement of her leg. 33 Kan. App. 2d at 8.

If Lanam was correct that Zoglman needed to know her detailed medical condition before moving her, then expert testimony would be required to establish the appropriate standard of care for moving a patient with her particular indications—she just had knee replacement surgery, was diabetic, was on pain medication, had only 67 degrees of flexion, was not at full strength, could only walk 130 feet with a front wheel walker, and had pain of 10 out of 10. Whether Lanam's condition on the day of discharge required one, two, or three CNAs is not a matter that is known by persons generally.

In her opening statement, Lanam equated the hospital's policies and procedures with the standard of care. However, expert testimony is required to determine whether a hospital's policies and procedures equate to the appropriate standard of care. *Stewart v. Hutchinson Hospital Corp.*, No. 89, 687, 2004 WL 48182, at *2-4 (Kan. App. 2004) (unpublished opinion).

12

Lanam contends that Zoglman's admission that she should have brought another person to assist with the transfer is sufficient to avoid dismissal. In *Goheen v. Graber*, 181 Kan. 107, 113, 309 P.2d 636 (1957), after the plaintiff's wife died in childbirth, the plaintiff contended that his wife's physician speculated the next day that his wife might have been saved by a Caesarean section. Our Supreme Court held that such a remark did not constitute evidence that "under the circumstances and conditions existing prior to her death, and of which the doctor and nurses in the exercise of skill and diligence were well aware, it was negligence and malpractice not to perform a Caesarean operation." 181 Kan. at 113. Here, Zoglman's alleged remark that she should have brought someone else to help put Lanam in the car was not evidence that Zoglman did not exercise the appropriate level of care under the circumstances and conditions that existed prior to the fall.

Because many of Lanam's contentions are not within the common knowledge of persons generally, the district court did not err in dismissing the case. Without expert testimony, Lanam could not prove that the hospital deviated from the appropriate standard of care—an essential element of her negligence claim. We now move on to Lanam's second claim.

*Considering the entire record, declaring a mistrial was reasonable.*

In a civil case, there are no statutory grounds for a mistrial. Even so, we will review the grant or denial of a mistrial under the abuse of discretion standard. *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 22, 327 P.3d 1014 (2012).

When a party alleges that an order in limine has been violated, the district court must determine (1) whether the order has been violated and, if so, (2) whether the party alleging the violation has established substantial prejudice resulting from that violation. *City of Mission Hills v. Sexton*, 284 Kan. 414, 436, 160 P.3d 812 (2007). Because

13

motions in limine are granted because the excluded evidence is deemed prejudicial, violation of an order in limine intrinsically has a prejudicial effect. *State v. Santos-Vega*, 299 Kan. 11, 25, 321 P.3d 1 (2014). The district court's determination is reviewed under the abuse of discretion standard. *Steinman v. Krisztal*, 247 Kan. 324, 328, 799 P.2d 475 (1990).

A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. 296 Kan. at 935.

The district court ordered Lanam not to use the term "safety rules." The concern was that the jury would conflate the standard of care with an alleged safety rule. Lanam attempts to show that she complied with the order in limine by blatantly omitting the portion of the judge's order that she violated. The judge's ruling on the order in limine in full was as follows:

> "THE COURT: The fact is we are in a courtroom and legal terms are going to be used. But what the court is going to rule is the term *safety rules* will not be used by plaintiff. We're going to deal with policies and procedures. But by the same token, it would certainly be allowed to indicate that the purpose of the policies and procedures is to ensure the safety or see that no harm of the people about who they protect, the policies and procedures are put into effect are to take care of.
>
> "So in my mind that takes care of the problem. It's not going to confuse the jury on policies and procedures and standard of care, but it also allows the fact the jury to be aware of, which I think they should be aware of, that's the purpose of the policies and procedures; is to provide for the welfare—in this case if there's such policies and procedures to prevent harm or keep the patient safe. Do I make myself clear?" (Emphasis added.)

14

The district court clarified further that the policies and procedures "will not be referred to as *safety rules*, but it certainly can be indicated those policies and procedures are . . . there for the safety and protection of people." (Emphasis added.)

Then Lanam's opening statement began with the term "safety requirements":

"MR. BRETZ: May it please the court. Ladies and gentlemen, what brings us to this courtroom today and through the rest of, possibly the rest of this week are the *safety requirements* that protect patients when they go to the hospital; requirements that protect patients like Miss Lanam only if they're followed.
. . . .
". . . And then in this trial you're going to hear evidence about what happens when these *safety requirements*, these policies, these procedures, are not followed." (Emphasis added.)

Lanam's counsel concluded by doing exactly what the district court was concerned about, conflating the standard of care with these "safety requirements":

"And ultimately at the end of this case you'll be asked the question about whether the hospital complied with the standard of care, which is probably a term that you don't use very often. But basically you'll be asked the question did the hospital, did the hospital staff do what they were supposed to. Did they follow *safety requirements*. And we'll argue at the end that they didn't and this is what Miss Lanam has suffered as a result. Thank you." (Emphasis added.)

The district judge ruled:

"Second issue was in relation to Mr. Bretz's opening statement in which he on numerous occasions made reference to safety regulations [*sic*]. Clearly in the court's view that is contrary to what the court ordered [regarding] the motion in limine, Mr. Bretz. You are to indicate policies and procedures; you're not supposed to use the term safety regulations [*sic*]. That's what I ordered. And you can speak of policy, or procedures and

15

policies and then have testimony or the fact that those were in effect for safety, but they will not be labeled as such is what I ordered.

"There was not an objection. Had there been an objection I certainly would have stopped it then immediately and do not expect it to happen again."

The district court did not abuse its discretion in ruling that Lanam violated the order in limine by referring to "safety requirements" rather than "safety rules." The terms are synonymous. Moreover, the court had already ruled that use of the term "safety rules" would prejudice the jury by conflating the standard of care with the safety rules.

It is important to remember that when the court ruled, it did not grant a mistrial based on counsel's use of the forbidden terms. The hospital proceeded to argue Lanam's case had become one in which expert testimony was needed. This is the issue that the judge dealt with:

"So the problem I'm having is the jury's already been told that the sole issue, disregarding the terminology, is not whether it was simple negligence but whether the hospital violated it's [*sic*] rules and regulations which would require an expert.

"And heaven knows I've, in 20 years as county attorney in criminal cases I hated mistrials and as a judge I hate it even worse, but quite honestly I don't see how I get out of this conundrum because basically it's now a medical malpractice case when I've already ruled that it has to be a simple negligence case and, unless it's ruled medical malpractice and there's expert testimony.

"So basically we have the defense is going to treat it in their defense by having an expert here on what a nurse should do. Mr. Bretz is going to argue according to his opening statement that the hospital did not follow policies and procedures which, again, doesn't matter to the court at this point whether they're referred to as safety regulations [sic] or whatever, and it doesn't deal with the issue of simple negligence. It deals with the matter with specific treatment of a patient in a medical issue. And quite honestly that needs to be solved and I don't see how I can proceed with this jury.

"I'm, with great reluctance, am at this point going to grant a mistrial . . . ."

16

The district court did not abuse its discretion in granting a mistrial. Lanam's case, as presented, was one requiring expert testimony and could not continue with this jury. See *State v. Morris*, 40 Kan. App. 2d 769, 781-82, 795, 196 P.3d 422 (2008). Finally, a district court has discretion to grant a mistrial regardless of whether there was a timely objection. *State v. Burnett*, 13 Kan. App. 2d 60, 62, 762 P.2d 192, *rev. denied* 244 Kan. 739 (1988). The court here had the discretion to declare a mistrial.

Affirmed.