No. 48,503

HOWARD WEBB and HANOVER INSURANCE COMPANY, *Appellants,* v. JACK E. LUNGSTRUM, *Appellee.*

(575 P.2d 22)

Opinion filed February 25, 1978.

*Stanley Juhnke,* of Dinges, Gottschalk, Bolton & Juhnke, of Hutchinson, argued the cause and was on the brief for the appellants.

*Charles D. Green,* of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a summary judgment entered in favor of a defendant doctor in a malpractice case. The parties signed and approved a joint stipulation of facts at a pretrial conference. On the basis of these stipulated facts and the

deposition of plaintiff's only expert medical witness, the trial court entered summary judgment. The point of error raised by plaintiff is that the trial court erred in concluding that expert medical testimony was necessary to establish medical malpractice in this case.

The following facts are taken from the stipulations of the parties in the pretrial order. Howard Webb, the plaintiff, sustained a severe laceration in his forearm about two inches above his left wrist. The injury occurred when a ramset gun he was using to tack strips on a concrete wall malfunctioned. Webb was taken to the emergency room at St. John's Hospital in Salina, Kansas. The defendant, an orthopedic surgeon, was called to treat the plaintiff. The surgeon discovered the flexor carpi-radialis, a tendon in the forearm, had been severed completely. The median nerve was partially severed. The defendant surgeon attended, reattached the tendon, sutured the median nerve, and treated the injury. No x-ray was taken at that time. Two and a half months later the plaintiff's family doctor, Charles Werhan, took an x-ray of plaintiff's left forearm. The x-ray revealed a small metal fragment in the left forearm. Two days later the defendant Lungstrum operated and removed the metal fragment. A month and three weeks later the defendant Lungstrum operated and excised a neuroma from the median nerve in plaintiff's left forearm. (A neuroma is a benign tumor of the nerve tissue which can be caused by irritation or external trauma.)

In addition to the facts stipulated in the pretrial order the plaintiff made the following admissions:

"(a)   That the only specific act of negligence which plaintiff claims defendant committed consists in the failure of the defendant to x-ray the left arm of the plaintiff to discover the presence of the metal fragment therein.

"(b)   The plaintiff admits that to make a submissible case under the doctrine of *res ipsa loquitor* [*sic*] it is necessary for the plaintiff to allege and prove a specific act of negligence; plaintiff further admits that the only specific act of negligence known to plaintiff and which he alleges in support of his claim to recover under the doctrine of res ipsa loquitor [*sic*] is the failure of the defendant to x-ray the left forearm of plaintiff in order to discover the presence of the metal fragment therein.

"(c)   The only medical experts known to plaintiff who will purportedly testify that the defendant was negligent are Dr. Charles Werhan and the defendant."

In the deposition of Dr. Charles Werhan he described the location and extent of the laceration treated by Dr. Lungstrum, which included the repair of the severed tendon and the median

nerve. After inspecting the emergency room report reflecting the initial surgery by Dr. Lungstrum, Dr. Werhan testified by deposition as follows:

"Q. Now, do I understand your testimony to be that based upon the nature of the injury and the action that he [Dr. Lungstrum] took, you observe no personal negligence from this information reflected on the ER report?

"A. No, I would say that would be routine handling of an injury of that sort.

. . . . . . . . . . . . . . . . . .

"Q. So that if a Doctor there inspecting the wound, the condition of the tendon and the condition of the nerve and especially if he had occasion to observe it and palpate it some distance either way from the bruised area concluded that an x-ray was not indicated; would you find any fault in that final judgment?

"A. I would not.

. . . . . . . . . . . . . . . .

"Q. Let me put it this way, Dr. Werhan, there was the original injury, there was the continued presence of the metal object from August 21st to November 13th, and there was the operation to remove the neuroma. Do you have an opinion based on reasonable medical certainty as to which of those three could have caused the loss of sensation in the fingers of the left hand—palm and fingers of the left hand of Mr. Webb?

"A. I would say that that is very difficult to answer. Any three could as far as losing sensation. What Mr. Webb was after mainly was relief of pain.

"Q. Right, but are you saying at this time that you could not say with scientific certainty which of those three did, in fact, cause loss of sensation of Mr. Webb?

"A. I would have to say yes.

. . . . . . . . . . . . . . . . . .

"Q. Do you know, Dr. Werhan, of any malpractice or negligence on the part of Dr. Lungstrum in the handling and treating of Howard Webb?

"A. No, I feel he handled the case most diligently and responded well to the complication when it arose."

After considering the stipulated facts and admissions of the plaintiff, together with the deposition of Dr. Werhan, it is apparent plaintiff proposed to offer no expert medical testimony to establish lack of reasonable care by Dr. Lungstrum.

It has long been recognized in medical malpractice actions the physician or surgeon is presumed to have carefully and skillfully treated or operated on his patient and there is no presumption of negligence from the fact of an injury or adverse result. (*Tatro v. Lueken,* 212 Kan. 606, 611, 512 P.2d 529.) A physician or surgeon is expected to have and exercise that reasonable degree of learning and skill ordinarily possessed by members of his profession and of his school of medicine in the community where he practices, or in similar communities. (*Chandler v. Neosho Memorial hospital,* 223 Kan. 1, 3, 574 P.2d 136.)

In malpractice cases expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on the part of a physician or surgeon in his medical diagnosis, his performance of surgical procedures and his care and treatment of patients. (*Voss v. Bridwell,* 188 Kan. 643, 659, 364 P.2d 955.) However, this rule does not give the members of the medical profession a monopoly on common sense, and the rule is limited to those matters clearly within the domain of medical science. When, in a given case, the diagnosis, treatment or care of a patient brings such bad results that lack of reasonable care would be apparent, using the common everyday knowledge of persons generally, such facts may be testified to by persons other than physicians. (*Goheen v. Graber,* 181 Kan. 107, 112, 309 P.2d 636.) This is referred to as the common knowledge exception.

There is a common knowledge exception to the rule requiring expert medical testimony in malpractice cases. This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally. (*Funke v. Fieldman,* 212 Kan. 524, 530, 512 P.2d 539; *Hiatt v. Groce,* 215 Kan. 14, 19, 523 P.2d 320.)

The question presented to this court is whether under the facts and circumstances the failure of Dr. Lungstrum to x-ray the injury falls within the common knowledge exception. If so, lack of reasonable care may be established by lay testimony and summary judgment for defendant was improper under K.S.A. 60-256(*c*). Several of our cases hold if a physician leaves a sponge, gauze, or instrument being used by him during a surgical procedure in the patient no expert medical testimony is necessary to establish lack of reasonable care. See *Russell v. Newman,* 116 Kan. 268, 226 Pac. 752; *Bernsden v. Johnson,* 174 Kan. 230, 255 P.2d 1033; and *Rule v. Cheeseman, Executrix,* 181 Kan. 957, 317 P.2d 472.

In the present case the small metal particle was from a link in the plaintiff's watchband. When the ramset gun malfunctioned it apparently stripped the watch from plaintiff's wrist, shattered the watchband and drove the small metal particle into the laceration where it lodged in the median nerve. The physician did not place

it there. He was not aware of its presence. The question posed by the pretrial order relates to the failure of the doctor to x-ray the arm to discover the presence of the metal fragment. We have no cases in point and after reviewing cases from other jurisdictions collected in Anno: Malpractice — Expert Witness — Necessity, 81 A.L.R.2d 597, it is difficult, if not impossible, to formulate a rule as to when the failure to make use of x-ray diagnosis may be considered negligence without expert medical testimony on the standard of reasonable care. The answer must depend on the facts and circumstances of each particular case. (cf., *Floyd et al. v. Walls*, 26 Tenn. App. 151, 168 S.W.2d 602, and *Funke v. Fieldman*, supra.)

After reviewing the circumstances appearing in the facts stipulated it is apparent the plaintiff appeared in the emergency room of the hospital with a deep laceration in his arm requiring the wound to be cleansed, a tendon to be rejoined and a median nerve to be repaired. This court cannot say from the nature of the injury what procedures are ordinarily required before the surgery and repair should be undertaken. The urgency of the repair of the tendon and the median nerve may be a factor to be considered in such cases. It is apparent using hindsight that the use of x-rays or other procedures to remove the metal article would have been advisable, but we cannot say the failure to subject the patient to x-rays with the attendant delay and expense constitutes lack of reasonable care by a member of the medical profession. We feel there should be expert medical testimony to establish the standard of care in this and similar cases.

When a licensed orthopedic surgeon treats a patient in the emergency room of a hospital for a deep laceration of the forearm involving a complete severance of a tendon and partial severance of the median nerve, the failure of the surgeon to x-ray the wound in advance to discover a small metal fragment forced into the laceration at the time of the initial injury is not such an obvious omission that it falls within the common knowledge exception; in such case expert medical testimony is necessary to establish a lack of reasonable care on the part of the surgeon.

The additional question of proof of proximate cause was raised in this case. Dr. Werhan testified that he could not say with reasonable certainty whether the loss of sensation in plaintiff's left hand was caused by the original injury, the continued pres-

ence of the metal object in the median nerve or the operation to remove the neuroma. However, because of the decision we have reached on the question of lack of reasonable care in failing to x-ray before surgery it is not necessary for us to determine the additional question of the necessity of expert medical testimony to prove proximate cause. Accordingly we hold summary judgment for defendant was proper.

The judgment is affirmed.