No. 88,371

JAMES PIPE, Individually and for and on Behalf of the Heirs at Law of EDWINA PIPE, Deceased, and JAMES PIPE, as Administrator of the Estate of EDWINA PIPE, Deceased, *Appellant*, v. JAMES J. HAMILTON, M.D., *Appellee*.

(56 P.3d 823)

Opinion filed November 1, 2002.

*Kevin L. Diehl*, of Ralston, Pope & Diehl, LLC, of Topeka, argued the cause, and *Eugene B. Ralston*, of the same firm, was with him on the brief for appellant.

*Wayne T. Stratton*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, argued the cause, and *Nathan D. Leadstrom*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Appellant James Pipe appeals the district court's grant of summary judgment in favor of appellee Dr. James J. Hamilton. The district court held that Pipe failed to establish a prima facie case of loss of chance of survival due to medical malpractice because a 5 to 10 percent chance of survival is not substantial as a matter of law. We reverse and remand.

Edwina Pipe was admitted to the hospital on May 24, 1998. Dr. Hamilton was brought in as a consultant in her case. On May 29, 1998, Dr. Hamilton operated on Edwina for small bowel obstruction. A second operation was performed on June 3, 1998, at which time Dr. Hamilton discovered gangrenous tissue. Based on the findings of the second operation, Dr. Hamilton believed Edwina's bowel to be dead. Dr. Hamilton informed James Pipe, Edwina's husband, that Edwina was only expected to live 6 to 12 hours. Based upon Dr. Hamilton's prognosis, James, acting pursuant to Edwina's living will and durable power of attorney for health care decisions, asked that life support be withdrawn. Edwina died shortly thereafter.

James Pipe filed this action against Dr. Hamilton in Shawnee County District Court on May 12, 2000. Dr. Hamilton filed a motion for summary judgment on the grounds Pipe failed to establish a prima facie case of medical malpractice or loss of chance of survival.

Pipe's expert witness, Dr. John White, testified in his deposition that it was his professional opinion that Dr. Hamilton had breached a duty of care by not performing more tests to determine if Edwina's condition was treatable. Dr. White also stated that even if Dr. Hamilton had met the standard of care required, "the likelihood that [Edwina] would have left the hospital was very small," which likelihood in terms of percentage was "[f]rom five to ten percent at best." Dr. White believed that despite what Dr. Hamilton did regarding her care, Edwina's mortality rate was between 90 and 95 percent.

The district court granted summary judgment in favor of Dr. Hamilton, finding that Pipe had failed to set forth a prima facie case for loss of chance of survival. Pipe filed a motion for new trial and reconsideration of the decision. The motion was denied. A

timely notice of appeal was filed. We have jurisdiction pursuant to K.S.A. 20-3018(c) (transfer on our own motion).

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 2001 Supp. 60-256(c). The trial court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom summary judgment is sought. *Irvin v. Smith*, 272 Kan. 112, Syl. ¶ 1, 31 P.3d 934 (2001). The party opposing summary judgment has the affirmative duty to come forward with facts to support its claim, although the party is not required to prove its case. *Dominguez v. Davidson*, 266 Kan. 926, 930, 974 P.2d 112 (1999). In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. *Friesen-Hall v. Colle*, 270 Kan. 611, 613, 17 P.3d 349 (2001). Summary judgment should never be granted merely because the court believes the movant would prevail at a trial on the merits. *Moran v. State*, 267 Kan. 583, 590, 985 P.2d 127 (1999). On appeal, this court applies the same rules, and where it finds reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

Neither party contends there is a material issue of fact in dispute. Instead, the parties take opposite positions as to whether a 5 to 10 percent chance of survival is sufficient to maintain a cause of action and survive a motion for summary judgment in Kansas. Because in this case the court is required to resolve all facts and inferences in favor of James Pipe, the party against whom summary judgment is sought, the court only determines whether the loss of a 10 percent chance of survival is sufficient to withstand summary judgment. See *Colorado Interstate Gas Co. v. Beshears*, 271 Kan. 596, Syl. ¶ 1, 24 P.3d 113 (2001).

Kansas first recognized the loss of chance of survival cause of action in *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149 (1984), *modified by Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1994). In *Roberson*, the defendant chiropractor was alleged to have been professionally negligent in failing to recognize his patient was experiencing symptoms consistent with those of acute heart

disease and in failing to refer the patient for appropriate medical treatment. The negligence was alleged to have substantially reduced the patient's chance of surviving the heart attack that ultimately took his life. One expert witness testified that the failure to receive medical treatment resulted in the loss of 6 percent chance for survival, while another testified that without medical treatment his chance for survival decreased from a 40 percent chance for survival with proper medical treatment to a zero percent chance for survival. The district court granted the chiropractor's motion for summary judgment, finding that the plaintiff had failed to meet the burden of proof and show that it was more likely than not that the chiropractor's conduct was a substantial factor in the causation of the injury.

On appeal, the *Roberson* court addressed the issue of whether the evidence of causation was insufficient to constitute a submissible jury question. The court cited the case of *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966), quoting as follows:

" 'When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. *If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable.* Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly. [Citation omitted.]' 368 F.2d at 632." 235 Kan. at 1015.

After considering *Hicks* and cases from other jurisdictions, the *Roberson* court reversed the district court and held as follows:

"The question of causation in cases involving negligent treatment of a potentially fatal condition (including failure to refer the patient to an appropriate specialist) is generally a matter to be determined by the finder of fact where the evidence has established the patient had an *appreciable chance* to survive if given proper treatment. In making this determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence.

. . . .

"There are sound reasons of public policy involved in reaching this result. The reasoning of the district court herein . . . , in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often would be at the mercy of those professionals on whom it must rely for life-saving health care." (Emphasis added.) 235 Kan. at 1020-21.

A decade later, this court further expounded upon the loss of chance cause of action in terms of loss of chance for better recovery in *Delaney*, 255 Kan. 199. In *Delaney*, the United States Court of Appeals for the Tenth Circuit certified the following questions to this court: (1) Does Kansas recognize a cause of action for loss of chance of recovery? (2) If so, what are the standards of proof for such claim? This court responded by stating that Kansas does recognize a cause of action for loss of chance for better recovery, relying upon the decision in *Roberson* and the policy behind that decision. *Delaney*, 255 Kan. at 210-13. The court further stated that in order to put forth sufficient evidence to establish the cause of action for loss of chance a party must demonstrate that the loss of chance was substantial. 255 Kan. at 215.

In determining the burden of proof to maintain a loss of chance action in Kansas, the *Delaney* court identified the following three general approaches utilized by other jurisdictions faced with this theory: (1) the all or nothing approach; (2) the relaxed standard of proof approach; and (3) the any loss of chance approach. The all or nothing approach is used in jurisdictions that refuse to recognize lost chance as a compensable injury. In an all or nothing jurisdiction, if a party is unable to demonstrate that a defendant's negligence was the proximate cause of the injury or death (better than even), no recovery is available. Jurisdictions that have adopted the relaxed standard of proof approach require a plaintiff to present evidence that a substantial or significant chance of survival or better recovery was lost. The *Delaney* court noted that the relaxed standard of proof approach was utilized in *Roberson*. In any loss of chance jurisdictions, a plaintiff is required to show only that there was any chance of survival or better recovery in order to establish a prima facie case and avoid summary judgment. 255 Kan. at 212-

15; see King, *"Reduction of Likelihood" Reformulation and Other Retrofitting of the Loss-of-a-Chance Doctrine*, 28 U. Mem. L. Rev. 491, 505-09 (Winter 1998).

The *Delaney* court held:

"Considering the various approaches adopted by the courts, we are of the opinion that the middle ground or so-called relaxed standard of proof approach is the better rule. In an action to recover for the loss of a chance to survive or for the loss of a chance for a better recovery, the plaintiff must first prove the traditional elements of a medical malpractice action by a preponderance of the evidence. The plaintiff must prove that the defendant was negligent in treating the patient, that the negligence caused harm to the plaintiff, and that as a result the plaintiff suffered damages. *In proving that the plaintiff suffered harm, the plaintiff must prove that the lost chance of survival or the lost chance for a better recovery when the plaintiff does survive was a substantial loss of the chance. We do not adopt the any loss of a chance approach nor do we attempt to draw a bright line rule on the percentage of lost chance that would be sufficient for the case to be submitted to the jury.* As we recognized in *Roberson*, the question of causation is generally a matter to be determined by the finder of fact. Our only deviation from the *Roberson* standard is that the evidence must show that the patient had a 'substantial' chance of survival or of a better recovery rather than an appreciable one." (Emphasis added.) 255 Kan. 215-16.

The *Delaney* court, in deciding to follow the relaxed standard of proof approach, noted:

"The relaxed standard of proof approach, commonly referred to as the 'substantial chance' approach, requires plaintiff to present evidence that a substantial or significant chance of survival or better recovery was lost. *If plaintiff meets this initial threshold,* the causation issue is submitted to the jury, using the traditional proximate cause standard to ascertain whether, in fact, the alleged malpractice resulted in the loss of a substantial or significant chance. Thus, the jury must find by a preponderance of the evidence that the alleged negligence was the proximate cause of the lost chance, but the lost chance itself need only be a substantial or significant chance, for a better result, absent any malpractice, rather than a greater than 50 percent chance of a better result." (Emphasis added.) 255 Kan. at 212.

The *Delaney* court went further and adopted the proportional damage approach to calculating damages. The proportional damage approach ensures that a plaintiff recovers only the loss attributable to the loss of chance and not for an arbitrary amount awarded by the jury or for the total damages sustained.

"Under the proportional damage approach, the amount recoverable equals the total sum of damages ordinarily recovered by the underlying injury or death multiplied by the percent of lost chance. Because this method requires expert medical testimony in ascertaining the appropriate (percent) amount of damages recoverable, courts employing this method eliminate the risks of compensating the plaintiff for anything other than the value of the lost chance. . . .

> 'This method is preferable because it apportions damages in direct relation to the harm caused; it neither overcompensates plaintiffs or unfairly burdens defendant with unattributable fault. Second, the percentage method gives juries and judges concrete guidelines on how to measure damages, alleviating the "pulling out of the hat" problem identified with the first method. If the decision maker believes plaintiff's expert(s) on causation, the percentage of chance lost, then it makes the usual finding on the value of a life ($X) and multiplies $X by the percentage of chance lost to arrive at the compensation for the lost chance to survive.' [*Boody v. U.S.*, 706 F. Supp. 1458, 1465-66 (1989).]" *Delaney*, 255 Kan. at 218.

The reasoning of *Delaney* and *Roberson* applies to this case. Thus, we are now faced with determining whether the loss of a 10 percent chance of survival is substantial as a matter of law.

The *Delaney* court provided some direction as to what is not substantial by stating:

> "To recover damages for loss of a chance for a better recovery, the lessened degree of recovery resulting from the medical malpractice must be a substantial one, and a plaintiff cannot recover for a loss of chance that is nothing more than a token or de minimis one." 255 Kan. 199, Syl. ¶ 7.

Black's Law Dictionary 1428 (6th ed. 1990) defines "substantial" as follows: "Of real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. . . . Something worthwhile as distinguished from something without value or merely nominal. . . . Synonymous with material." See also PIK Civ. 3d 123.21; PIK Civ. 3d 123.22 ("substantial chance" defined as "one which is capable of being estimated, weighed, judged, or recognized by a reasonable mind").

No cases were cited to this court or discovered through our own research in which a bright line rule has been adopted for determining what is substantial in terms of loss of chance. As this court did in *Delaney*, courts in other jurisdictions that have adopted the

substantial chance approach have declined to adopt an exact per-centage as being substantial for purposes of establishing a prima facie case. For example, in *Perez v. Las Vegas Medical Center*, 107 Nev. 1, 805 P.2d 589 (1991), the Nevada Supreme Court recognized for the first time that a plaintiff could recover for loss of chance in medical malpractice actions in which the plaintiff suffered death or debilitating injury and adopted the substantial chance approach. The court held as follows:

"Specifically, in order to create a question of fact regarding causation in these cases, the plaintiff must present evidence tending to show, to a reasonable medical probability, that some negligent act or omission by health care providers reduced a substantial chance of survival given appropriate medical care. *In accord with other courts adopting this view, we need not now state exactly how high the chances of survival must be in order to be 'substantial.' We will address this in the future on a case by case basis.* There are limits, however, and we doubt that a ten percent chance of survival as referred to in the example in the dissenting opinion would be actionable. Survivors of a person who had a truly negligible chance of survival should not be allowed to bring a case fully through trial. Perhaps more importantly, in cases where the chances of survival were modest, plaintiffs will have little monetary incentive to bring a case to trial because damages would be drastically reduced to account for the preexisting condition." (Emphasis added.) 107 Nev. at 6-7.

The *Perez* court went on to find that the testimony that the decedent in that case had a "reasonable chance of survival given proper medical attention," viewed in the light most favorable to the plaintiff under the summary judgment standard, established that the decedent would have had a substantial chance of survival. Thus, the court found that the plaintiff had raised a genuine issue of material fact on the issue of causation pursuant to the loss of chance doctrine and that the motion for summary judgment should have been denied. 107 Nev. at 7; see *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 474-75 (Okla. 1987) (Oklahoma Supreme Court first recognized loss of chance doctrine, adopting substantial chance approach; court noted it is unnecessary to require precise percentage increment of chance of recovery or survival to create jury question on causation).

Additional cases in which courts have specifically determined whether loss of chance was substantial or appreciable provide fur-

ther direction on this issue. See *Borgren v. United States*, 716 F. Supp. 1378, 1383 (D. Kan. 1989) (loss·of 30% to 57% chance of 10-year disease-free survival was appreciable loss of chance); *Falcon v. Memorial Hosp*, 436 Mich. 443, 470, 462 N.W.2d 44 (1990) (superceded by statute, Mich. Comp. Laws § 600.2912a[2] [2000]) (loss of 37.5% chance of survival constitutes loss of substantial opportunity; declined to determine what lesser percentage would fail to constitute substantial opportunity); *Stewart v. New York City Health and Hospitals Corp.*, 207 App. Div. 2d 703, 704, 616 N.Y.S.2d 499 (1994) (in reviewing and reinstating jury award for plaintiff where experts opined that plaintiff would have had less than 50% chance or only 5% to 10% chance of conceiving a child naturally, court noted, arguably in dicta, that if jury found that plaintiff lost even a 5% to 10% chance and that this chance was substantial the verdict would be justified); *Kallenberg v. Beth Israel Hosp.*, 45 App. Div. 2d 177, 180, 357 N.Y.S.2d 508 (1974) (affirmed jury verdict for plaintiff in malpractice action where expert opined there was loss of 20% to 40% chance of survival).

The *Roberson* court recognized the loss of a 40 percent chance of survival as being sufficient to withstand a motion for summary judgment. 235 Kan. 1006. Pipe contends a 10 percent chance of survival is more than a trifling matter and is something that Kansas public policy supports as being recognized as substantial. We agree. As a matter of law, a 10 percent loss of chance cannot be said to be token or de minimis.

Reversed and remanded.

LARSON, S.J., assigned.