NOT DESIGNATED FOR PUBLICATION

No. 119,272

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JACALYN PATTERSON (JACK PATTERSON),
*Appellant*,

v.

MARK NEWTH, D.O.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed March 15, 2019. Affirmed.

*Jacalyn Patterson*, appellant pro se.

*Thomas L. Theis*, of Foulston Siefkin LLP, of Topeka, for appellee.

Before POWELL, P.J., LEBEN, J., and KEVIN BERENS, District Judge, assigned.

PER CURIAM: Jacalyn Patterson appeals the district court's order granting summary judgment for Mark Newth, D.O., after it found there was no expert testimony to establish the standard of care and causation elements in her medical malpractice claim for her father, Jack Patterson. On appeal, Jacalyn argues the district court erred because Newth negligently treated and cared for Jack and, for the first time on appeal, that expert testimony was not required because Jack's diagnosis of lung cancer was foreseeable to Newth and because the doctrine of res ipsa loquitur applies. We find no merit in Jacalyn's arguments, and we therefore affirm the district court.

1

Newth had been Jack's primary physician since 1979. In January 2015, Jack went to see Newth because of coughing and phlegm. At the appointment, Newth ordered no X-ray or MRI, did not refer Jack to a lung specialist, and prescribed no other treatment. Shortly after this appointment, Jack's family took him to the emergency room. The emergency room doctors diagnosed Jack with advanced stage-four lung cancer. In June 2016, Jacalyn filed a pro se petition against Newth, alleging he committed medical malpractice in his care and treatment of Jack before and during the January 2015 appointment which caused Jack to lose a chance of better recovery from lung cancer.

After Newth answered the petition, the district court entered a case management order requiring Jacalyn to submit an expert witness list no later than May 12, 2017, and expert witness disclosures by July 14, 2017. The district court identified the issues, in part, as negligence, causation, loss of chance, wrongful death, and medical malpractice.

On May 16, 2017, Newth moved the district court to prohibit Jacalyn from calling an expert witness for her medical malpractice claims because she did not timely file an expert witness list as required by the case management order. The register of actions reveals Jacalyn submitted a "Plaintiff's Expert Witness and Exhibit List" on May 22, 2017, but this document is not included in the record on appeal. Shortly after, the district court denied Newth's motion but limited Jacalyn's experts to the three persons on her list and gave Jacalyn until August 28, 2017, to submit the expert reports.

On August 28, 2017, Jacalyn informed the district court she had no reports from two of the three experts. Jacalyn did submit a written statement from Michael Hurwitz, M.D., which consisted of a letter from Jacalyn to Hurwitz and his handwritten response. In the letter, Jacalyn wrote that Hurwitz had examined Jack's x-rays during his

2

emergency room visit and had informed the family that no chemotherapy, radiation, or other treatment would be performed for Jack's advanced stage-four lung cancer. Jacalyn asked Hurwitz whether any treatments or modalities could have stopped or shrunk the tumor if Jack had presented to the hospital at an earlier time. Hurwitz wrote "a qualified yes" and referenced his attached handwritten note, which read: "In general the earlier a lung cancer is detected the more treatment options are available." Hurwitz' note also explained that while an earlier diagnosis may lead to more treatment options, the availability of the options depends on the person's age, health status, and other factors; and even with early stage cases the cancer can progress after initial treatment and lead to death. Newth subsequently took Hurwitz' deposition.

On October 25, 2017, Newth moved for summary judgment, arguing that Jacalyn failed to establish a prima facie case for her medical malpractice claims due to the lack of expert testimony on the standard of care and causation. In response, Jacalyn argued that the evidence established Jack could have had some chance of survival had he received treatment at an earlier time and that expert testimony was not required because the common knowledge exception applied.

On January 12, 2018, the district court entered a summary judgment order and found the following uncontroverted facts from Hurwitz' deposition:

"15. Dr. Hurwitz testified that he was not aware that the purpose of [Jacalyn's] note was to represent that he was an expert witness.

"16. Dr. Hurwitz repeatedly testified that he did not recall anything about [Jack's] visit to the emergency room and did not recall anything about the case at all.

"17. When asked whether he was able to state an opinion within a reasonable degree of medical probability that [Jack], if he did have lung cancer and/or liver

3

metastasis, that it was reasonably able to be detected at any time before his initial consultation, Dr. Hurwitz testified that he had 'no knowledge about that.'

"18. When asked whether he could state an opinion within a reasonable degree of medical probability that the conduct of Dr. Newth in any way led to a loss of chance for a better recovery for [Jack] from his cancer, Dr. Hurwitz testified that he didn't have 'any information regarding that.'

"19. When asked whether he could state within a reasonable degree of medical probability that Dr. Newth could have prevented [Jack's] cancer or stopped its progression, Dr. Hurwitz testified that he had 'no knowledge about that.'

"20. When asked whether he could state within a reasonable degree of medical probability that in [Jack's] specific case that there ever was an opportunity to diagnose his cancer at an earlier stage, Dr. Hurwitz testified that he had 'no knowledge of that.'

"21. Further, Dr. Hurwitz agreed that for some cancers, there may not be an opportunity to detect their existence before reaching an advanced stage.

"22. When asked whether [Jack] had such a cancer, Dr. Hurwitz testified that he had 'no knowledge of that.'

"23. When asked if the primary[] physician had done certain studies of an individual with cancer symptoms would the outcome be different Dr. Hurwitz replied: 'I'll give my final thoughts on this, answering your question. When I got this letter you asked me if he presented earlier, if the cancer had been diagnosed before stage IV there might have been different modalities available. That's true for any patient. It doesn't mean that the individual patient would have been a candidate for any of those modalities and it doesn't mean it would lead to a different outcome.

[']The other question that you're asking me is at the presentation of an individual with cancer to a primary physician with certain symptoms, if they had done certain studies, it doesn't mean that it would have been diagnosed earlier. You see we don't know that. We don't know that in any case . . .'

4

"24. When asked whether there would have been a better chance of recovery if an X-ray had been taken to find the cancer earlier, Dr. Hurwitz testified that he 'wouldn't be able to answer that' and that he 'wouldn't be able to, as an expert, say.'

"25. When asked whether there could have been any kind of a better chance of a better outcome if the cancer had been found earlier, Dr. Hurwitz testified that he 'wouldn't know' and that he 'would have no way of knowing in any patient.'

"26. When asked when, based on a person's symptoms, is it appropriate for X-rays or a referral to a specialist, Dr. Hurwitz testified: 'Each case is different. I couldn't comment on this case. I understand what you're trying to get at but I wouldn't know. I don't know if anybody would know.'"

The district court also found that Hurwitz' handwritten note failed to give a standard of care opinion and failed to allege that Newth breached a standard of care. The district court held that the common knowledge exception was inapplicable because the evidence did not establish that a person with no medical knowledge could assess the wrongfulness of Newth's treatment of Jack without expert testimony. As a result, the district court granted summary judgment for Newth. Jacalyn moved the district court to reconsider, but it denied her motion.

Jacalyn timely appeals.

DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT TO NEWTH?

On appeal, Jacalyn argues the district court erred in granting summary judgment because a trier of fact could assess Newth's negligence without expert testimony; that Newth's failure to diagnose and properly treat Jack—as exemplified by his failure to order an x-ray and to refer Jack to a lung specialist before and during his January 2015 appointment—caused Jack to suffer a loss of chance of better recovery from lung cancer; and, for the first time on appeal, that a juror could also rely on his or her own experiences

to assess Newth's negligence based on the doctrines of foreseeability and res ipsa loquitur. We address her arguments in order.

## A.    *Standard of Review*

We liberally construe pro se pleadings, meaning that we give "'effect to the pleading's content rather than the labels and forms used to articulate'" the arguments. *State v. Gilbert*, 299 Kan. 797, 802, 326 P.3d 1060 (2014) (quoting *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 [2010]). However, "[l]iberal rules of construction cannot transform the reality of a pleading's content or the arguments being advanced" by a pro se litigant. *State v. Hankins*, 304 Kan. 226, Syl. ¶ 2, 372 P.3d 1124 (2016); *Gilbert*, 299 Kan. at 798.

The standard for summary judgment is well known:

> "'Summary judgement is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the fact subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

If the party moving for summary judgment "shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party 'has the affirmative duty to come forward with facts to support its claim, although it is not

6

required to prove its case."' 301 Kan. at 623. The nonmoving party "cannot evade summary judgment on the mere hope that something may develop at the trial." *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, Syl. ¶ 3, 205 P.3d 1245 (2009). "'Mere speculation is insufficient to avoid summary judgment.'" *Unified Gov't of Wyandotte County v. Trans World Transp. Svcs.*, 43 Kan. App. 2d 487, 490, 227 P.3d 992 (2010).

Because "negligence is never presumed and may not be inferred from a lack of success or an adverse result," summary judgment in favor of an injured party is seldom proper in a medical malpractice case. *Esquivel v. Watters*, 286 Kan. 292, Syl. ¶ 3, 183 P.3d 847 (2008). That said, "[n]egligence may be proved in a medical malpractice case by direct evidence or by circumstantial evidence; in other words, evidence from which an inference of negligence can be made." *Hubbard v. Mellion*, 48 Kan. App. 2d 1005, 1013, 302 P.3d 1084, *rev. denied* 298 Kan. 1202 (2013).

"Medical malpractice is negligence of a healthcare professional in the diagnosis, care, and treatment of a patient." *Perkins v. Susan B. Allen Memorial Hospital*, 36 Kan. App. 2d 885, 888, 146 P.3d 1102 (2006) (citing *Webb v. Lungstrum,* 223 Kan. 487, 490, 575 P.2d 22 [1978]), *rev. denied* 283 Kan. 931 (2007). To support a medical malpractice claim, the plaintiff must establish:

> "(1) The health care provider owed the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (2) the provider breached this duty or deviated from the applicable standard of care; (3) the patient was injured; and (4) the injury proximately resulted from the breach of the standard of care. [Citation omitted.]" *Drouhard-Nordhus*, 301 Kan. at 623.

"The plaintiff . . . bears the burden of showing, ordinarily through expert medical testimony, not only the doctor's negligence, but that the negligence caused the plaintiff's injury." *Esquivel*, 286 Kan. 292, Syl. ¶ 3; see also *Venters v. Sellers*, 293 Kan. 87, 103-04, 261 P.3d 538 (2011) (explaining plaintiff's case lacking expert testimony on causation

7

as "vulnerable to a defense summary judgment motion"). "Generally, expert testimony is required to establish the appropriate standard of care and causation because such matters are outside the knowledge of the average person without specialized training." *Perkins*, 36 Kan. App. 2d at 888; see *Russell v. May*, 306 Kan. 1058, 1071, 400 P.3d 647 (2017).

> "In medical malpractice actions, strong reliance has to be placed on expert rather than lay testimony. The admission of expert testimony is based on necessity arising out of the particular facts of each case. Expert testimony is necessary where normal experience and qualifications of lay persons serving as jurors does not permit them to draw proper conclusions from the facts and circumstances of the case." *Pope v. Ransdell*, 251 Kan. 112, Syl. ¶ 3, 833 P.2d 965 (1992).

The general rule requiring expert testimony, however, "does not give the members of the medical profession a monopoly on common sense, and the rule is limited to those matters clearly within the domain of medical science." *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978). Accordingly, there are two exceptions to the requirement of expert testimony: the common knowledge exception and res ipsa loquitur. *Hubbard*, 48 Kan. App. 2d at 1013-14.

B.    *Common Knowledge Exception*

Before us, Jacalyn fails to clearly argue that the district court erred in granting Newth summary judgment on the grounds that she failed to present required expert testimony on the standard of care and causation. Nevertheless, a thorough review of the summary judgment order and Hurwitz' handwritten statement and deposition testimony confirms that Hurwitz provided no expert opinion on whether Newth's treatment breached a professional standard of care and that this breach caused Jack harm.

In granting summary judgment, the district court held that (1) Jacalyn had no expert testimony to establish the standard of care, a breach of the standard, and that such

8

breach caused Jack's injury; and (2) the common knowledge exception did not apply because a person without medical knowledge could not assess the wrongfulness of Newth's conduct without expert testimony.

> "The common knowledge exception in medical malpractice cases applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally.

> "Kansas courts have identified three essential elements to the common knowledge exception: (1) the plaintiff has asserted a claim of medical malpractice; (2) the care or result of the care is patently bad; and (3) a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony. Whether or not the common knowledge exception applies to a given set of facts is a question of law. *It is a narrow exception and has rarely been applied.* [Citations omitted.]" (Emphasis added.) *Hubbard*, 48 Kan. App. 2d at 1015.

Most cases applying the common knowledge exception arise from the failure of attending physicians to remove foreign objects from the body after treatment. See, e.g., *Rule v. Cheeseman, Executrix*, 181 Kan. 957, 962-63, 317 P.2d 472 (1957); *Bernsden v. Johnson*, 174 Kan. 230, 238, 255 P.2d 1033 (1953); see also *McKnight v. St. Francis Hosp. & School of Nursing*, 224 Kan. 632, 634-35, 585 P.3d 984 (1978) (applying common knowledge exception when patient fell onto floor during x-ray when table was tilted vertically); *Schwartz v. Abay*, 26 Kan. App. 2d 707, Syl. ¶ 3, 995 P.2d 878 (1999) (holding common knowledge exception applied when physician admitted to malpractice by operating on wrong vertebral disc).

Although unpublished, several federal courts and courts of other states have found that a health care provider's untimely diagnosis of or failure to diagnose cancer presented

9

issues outside the common knowledge and experience of laymen. See, e.g., *Nottingham v. United States*, No. 2:16-CV-03022, 2017 WL 3026926, at *4 n.4 (S.D. W. Va. 2017) (unpublished opinion) (finding common knowledge exception not raised but concluding does not apply to case alleging physician failed to timely follow-up with plaintiff after breast films showed abnormality and delay resulted in diagnosis of later stage cancer); *Griswold v. Stern*, No. CV065003433S, 2009 WL 1143134, at *3-4 (Conn. Super. Ct. 2009) (unpublished opinion) ("the procedures and the risk factors related to the diagnosis and treatment of Stage IV-A papillary thyroid cancer does not fall within the common knowledge of laypersons"), *aff'd* 126 Conn. App. 265, 10 A.3d 1095 (2011); *O'Donald v. McConnell*, No. 332004, 2004 WL 1965034, at *2 (Del. 2004) (unpublished opinion) (affirming summary judgment for plaintiff's failure to present expert testimony on causation for failure to timely diagnose lung cancer claim); *Clines v. Susan E. Janocik, M.D., PLLC*, No. 2016-CA-000122-MR, 2017 WL 2705401, at *5-6 (Ky. Ct. App. 2017) (unpublished opinion) (finding Hodgkin's lymphoma diagnosis based on patient's presenting signs and symptoms required expert testimony).

The district court did not err in finding the common knowledge exception inapplicable to Jacalyn's medical malpractice claims, holding that Jacalyn's claims concerned matters that a layperson could not assess without the aid of expert testimony. Whether Newth committed malpractice in failing to diagnose or properly investigate whether Jack suffered from lung cancer—from a review of Jack's symptoms and background—were not issues a layperson could assess based on his or her common knowledge and experience.

C.    *Loss of Chance*

Jacalyn also argues she presented evidence to preclude summary judgment because Hurwitz' statements show Newth's negligence resulted in Jack losing any chance of a better recovery or survival.

10

Relying on our Supreme Court's decision in *Pipe v. Hamilton*, 274 Kan. 905, 56 P.3d 823 (2002), Jacalyn argues that "a plaintiff is required to show only that there was any chance of survival or better recovery in order to establish a prima facie case and avoid summary judgment." 274 Kan. at 909 (citing *Delaney v. Cade*, 255 Kan. 199, 212-15, 873 P.2d 175 [1994]). Jacalyn claims Hurwitz' statements—that an earlier diagnosis or lower stage cancer diagnosis may have allowed Jack to have more or different treatment options—precluded summary judgment because she only needed to show Jack lost any better chance of recovery or survival.

But Jacalyn's reliance on the *Pipe* quotation is misplaced. In *Pipe*, our Supreme Court reviewed the three general approaches—identified by the court in *Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1994)—to be used in determining the burden of proof for a loss of chance action: "(1) the all or nothing approach; (2) the relaxed standard of proof approach; and (3) the any loss of chance approach." 274 Kan. at 909. The quotation upon which Jacalyn relies states the standard of proof for the any loss of chance approach. Our Supreme Court did not adopt that approach but instead adopted the relaxed standard of proof approach. See 274 Kan. at 910. Thus, Jacalyn's quotation from *Pipe* does not reflect the correct legal standard to establish a loss of chance claim.

To prove a loss of chance claim,

"the plaintiff must first prove the traditional elements of a medical malpractice action by a preponderance of the evidence. The plaintiff must prove that the defendant was negligent in treating the patient, that the negligence caused harm (the loss of a chance for a better recovery) to the plaintiff and, as a result, the plaintiff suffered damages. In proving that the plaintiff suffered harm, the plaintiff must prove that the lost chance for a better recovery was a *substantial* loss of the chance." (Emphasis added.) *Delaney*, 255 Kan. 199, Syl. ¶ 5.

11

"The 'loss of chance' rule is an exception to the normal requirement of proving causation." *Donnini v. Ouano*, 15 Kan. App. 2d 517, 521, 810 P.2d 1163, *rev. denied* 248 Kan. 994 (1991). For a traditional negligence claim, a plaintiff must prove it is more likely than not that the damage suffered was caused by the defendant's negligent acts or omissions. See *Rhoten v. Dickson*, 290 Kan. 92, 115, 223 P.3d 786 (2010). Our Supreme Court has explained that the lessened degree of recovery in a loss of chance claim must amount to a substantial loss of chance which is more than a token or de minimis amount. *Delaney*, 255 Kan. at 217. The court has also held: "As a matter of law, a 10 percent loss of chance cannot be said to be token or de minimis." *Pipe*, 274 Kan. at 913; see also *Donnini*, 15 Kan. App. 2d 517, Syl. ¶ 4 (holding if jury finds patient has over 50 percent chance of survival, then traditional negligence, not loss of chance, rules apply).

Contrary to Jacalyn's argument on appeal, a plaintiff cannot simply show that the defendant's negligence caused the plaintiff to suffer any loss of chance. Instead, Jacalyn was required to prove a traditional medical malpractice claim and show Jack suffered a substantial loss of chance. *Delaney*, 255 Kan. 199, Syl. ¶ 5. In addition, Jacalyn was required to have an expert witness establish the amount of damages or percentage of chance lost in the loss of chance claim. 255 Kan. at 218; see *Finney v. City of Wellington*, No. 102,002, 2010 WL 1253647, at *4 (Kan. App. 2010) (unpublished opinion) (applying *Delaney*); see also *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1275-76, 1276 n.7 (10th Cir. 2013) (affirming summary judgment where no authority in Kansas allowing a loss of chance claim "to proceed without an finding of a specific percentage of chance lost"); *Vacura v. Sliter*, No. 110,383, 2014 WL 3843295, at *6 (Kan. App. 2014) (unpublished opinion) (affirming summary judgment, in part, because plaintiff presented no expert testimony on percent of chance of recovery lost).

Hurwitz did not state and Jacalyn presented no expert testimony that Newth breached a professional standard of care, that Newth's negligence caused Jack harm, and that Newth's negligence caused Jack to suffer a specific percentage of lost chance.

12

Instead, Hurwitz testified he would not be able to say, as an expert, if Jack had a better chance of recovery if an x-ray had been ordered earlier. Hurwitz also testified he had no way of knowing if Jack had any better chance of recovery if the cancer been found earlier. Because Jacalyn has no expert testimony establishing the elements of her claim, her loss of chance for better recovery claim cannot succeed.

Jacalyn argues she presented information from a treatise to support her loss of chance claim which establishes the defined standard of care for patients who receive a similar cancer diagnosis and receive some treatment as a three- to four-month survival average. But even if we were to accept a three- to four-month survival rate as the standard of care, Jacalyn's claim lacks expert testimony establishing causation and the percentage of chance lost in order to preclude summary judgment. Thus, Jacalyn's loss of chance claim cannot succeed without the presentation of expert testimony.

D.    *Foreseeability and Res Ipsa Loquitur*

For the first time on appeal, Jacalyn argues that a layperson could assess Newth's negligence (1) because Jack's lung cancer was foreseeable to Newth and (2) res ipsa loquitur applies. However, these arguments are unavailing because such claims also require expert testimony.

Newth counters that we should decline to address her newly raised claims under Kansas Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). Generally, issues not raised before the district court cannot be raised for the first time on appeal. However, there are three exceptions to this general rule:

> "'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the

district court is right for the wrong reason.'" *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

The party raising the issue must explain why we should apply the exception. Rule 6.02(a)(5); *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). And our Supreme Court has warned litigants that they disregard this rule at their own peril. *Godfrey*, 301 Kan. at 1044.

In her reply brief, Jacalyn argues our consideration of her claims raised for the first time on appeal would serve the ends of justice. But Jacalyn cites no authority to support her claim. A failure to support a claim with pertinent authority or explain why a claim is sound despite a lack of authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, Syl. ¶ 3, 298 P.3d 273 (2013). These failures notwithstanding, even if Jacalyn had properly presented her foreseeability and res ipsa loquitur claims before us, as we explain below, they lack merit.

## 1. *Foreseeability*

Jacalyn argues for the first time on appeal it was reasonably foreseeable to Newth that Jack suffered from lung cancer and that Newth's negligence in failing to order an x-ray or to refer Jack to a specialist were obvious omissions because of their long-term doctor-patient relationship.

Our Supreme Court has explained:

"'There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must

14

show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable.'" *Burnette v. Eubanks*, 308 Kan. 838, 846, 425 P.3d 343 (2018) (quoting *Drouhard-Nordhus*, 301 Kan. at 623).

But Jacalyn's claim still requires expert testimony, which is lacking. Whether Newth breached a standard of care and could have reasonably foreseen his failures—to order an x-ray, refer Jack to a specialist, or timely diagnose Jack with lung cancer—would create a risk of harm to Jack based on his symptoms, medical history, and employment consist of complex medical issues beyond a layperson's common knowledge and experience. See generally *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 435-36, 228 P.3d 1048 (2010) (finding "whether [plaintiff's] aspiration event was reasonably foreseeable to [defendant health care providers], who . . . would be foreseeing the potential course of treatment of a patient and that treatment's potential risks" required expert testimony); *Collins v. Meeker*, 198 Kan. 390, 402, 424 P.2d 488 (1967) (finding whether surgeon negligent for failing to review past hospital records or history before surgery outside common knowledge and experience). Thus, Jacalyn's argument on appeal lacks merit.

2. *Res ipsa loquitur*

Next, Jacalyn argues for the first time on appeal that the doctrine of res ipsa loquitur applies and that she need not present expert testimony to establish the standard of care. "The res ipsa loquitur doctrine applies when a layperson could find that the patient's condition was such that would ordinarily not have occurred if due care had been exercised." *Hubbard*, 48 Kan. App. 2d at 1014 (citing *Tatro v. Lueken*, 212 Kan. 606, 611, 512 P.2d 529 [1973]). We review whether res ipsa loquitur applies on a case-by-case basis. 48 Kan. App. 2d at 1016.

In *Voss v. Bridwell*, 188 Kan. 643, Syl. ¶ 6, 364 P.2d 955 (1961), our Supreme Court explained:

"In medical malpractice cases where the action is not founded upon the mere failure of a physician or surgeon to secure the desired result, or upon the merits of a diagnosis or of scientific treatment, the doctrine of res ipsa loquitur has application to those situations in which the injury results from an unusual occurrence, not ordinarily found where the service performed followed the usual procedure of those skilled in that particular practice, provided a layman is able to say as a matter of common knowledge and observation, that the consequences of professional treatment were not such as would ordinarily have followed if due care had been exercised."

The *Voss* court further stated:

"It must be conceded the doctrine of *res ipsa loquitur* can have no application in a suit against a physician or surgeon which involves the merits of a diagnosis or of scientific treatment. The physician or surgeon is not required at his peril to explain why any particular diagnosis was not correct, or why any particular scientific treatment did not produce the desired result. Based upon previous decisions of this court (*Rhodes v. DeHaan*, supra; and *Natanson v. Kline*, supra) the doctrine of *res ipsa loquitur* has no application where, in an ordinary suit against a physician or surgeon for malpractice, the only showing is that the desired result of an operation or treatment was not accomplished." 188 Kan. at 658-59.

Jacalyn's malpractice claims require the trier of fact to review the merits of Newth's failure to diagnose and properly treat Jack. A layperson could not say—as a matter of common knowledge and experience—that the consequences of Newth's professional treatment were not such as would ordinarily have followed if due care had been exercised. Res ipsa loquitur does not apply here.

Jacalyn failed to produce any expert testimony to support or establish the elements of the standard of care and causation. Jacalyn's loss of chance claim lacks the required expert witness testimony establishing the standard of care, causation, and percentage of chance lost; her foreseeability claim similarly lacks the required expert testimony; and res ipsa loquitur does not apply to claims assessing the merits of a physician's diagnosis and treatment. The district court did not err in granting Newth summary judgment.

Affirmed.