| DELVIN BREAUX | * | NO. 2023-CA-0062 |
| --- | --- | --- |
| VERSUS | * | |
| | | COURT OF APPEAL |
| OCHSNER CLINIC, LLC, | * | |
| OCHSNER CLINIC | | FOURTH CIRCUIT |
| FOUNDATION, MISTY SURI, | * | |
| MD, AND DERYK JONES, MD | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-08056, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Dale N. Atkins, Judge Nakisha Ervin-Knott)

Vincent E. Odom
T. Carey Wicker, III
Michael Sepcich
Davida F. Packer
Thomas C. Wicker, IV
CAPITELLI AND WICKER
1100 Poydras Street, Suite 2950
New Orleans, LA 70163

    COUNSEL FOR PLAINTIFF/APPELLANT

John Baptiste Cazale, V
Peter Elliot Sperling
FRILOT L.L.C.
1100 Poydras Street
3700 Energy Centre
New Orleans, LA 70163-3700

    COUNSEL FOR DEFENDANTS/APPELLEES

                            **REVERSED AND REMANDED**
                            **September 29, 2023**

This a medical malpractice case. Plaintiff-patient is Delvin Breaux ("Mr. Breaux"); defendants-medical providers are Dr. Misty Suri, Dr. Deryk Jones, and their employers—Ochsner Clinic, LLC; Ochsner Clinic Foundation; or both (collectively "Ochsner"). From the trial court's November 21, 2022 judgment granting the summary judgment motion filed by Dr. Suri, Dr. Jones, and Ochsner (collectively "Physicians") and dismissing the suit, Mr. Breaux appeals. For the reasons that follow, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

During 2017 pre-season training camp, Mr. Breaux—a New Orleans Saints' defensive player—injured his left leg. Based on an x-ray, taken on July 30, 2017, and an MRI, taken the next day, Dr. Suri and Dr. Jones—the Saints' team doctors—diagnosed Mr. Breaux's injury as a bone contusion. During the following week, Mr. Breaux continued to have pain. Dr. Suri and Dr. Jones ordered and reviewed a CT scan, taken on September 2, 2017. Once again, they diagnosed Mr. Breaux's injury as a bone contusion.

1

During the following week, Mr. Breaux continued to complain of pain. Mr. Breaux was referred to another physician for a second opinion. On August 14, 2017, the second-opinion physician—Dr. Gregory Stewart—took another x-ray and diagnosed Mr. Breaux's leg injury as a fractured fibula. Dr. Stewart also opined that he could see the fracture on the original x-ray, taken July 30, 2017. The fracture required surgical correction. Shortly thereafter, Dr. Robert Anderson performed surgery on Mr. Breaux's leg. Mr. Breaux remained on injured reserve for the entire 2017 football season. At the end of the season, the Saints did not offer to renew Mr. Breaux's contract.[1]

Mr. Breaux filed a medical malpractice complaint with the Louisiana Patients' Compensation Fund against Physicians.[2] A medical review panel was formed—the MRP. The MRP found that the evidence presented did not support the conclusion that Physicians breached the applicable standard of care. The MRP opined as follows:

- The treatment rendered to Mr. Breaux by Physicians was timely and appropriate;

- The treatment plan and return to the sport was timely and appropriate for a professional athlete; and

- The ordering of radiographs and advanced imaging by Physicians was appropriate and in excess of the standard of care.

---

[1] Mr. Breaux entered only one contract with the Saints—a three-year contract that ended at the end of the 2017 season.

[2] The medical review complaint only named three providers—Dr. Suri, Dr. Jones, and Ochsner Clinic Foundation; Ochsner Clinic, LLC was not named.

Thereafter, Mr. Breaux filed this suit against Physicians. In his petition, he averred that during the thirteen-day period of misdiagnosis—between July 30, 2017, and August 14, 2017—he suffered "continued and progressive pain"; the misdiagnosis "caused him to continue with a physically demanding and strenuous practice regimen, causing severe pain, grievous injuries and damages"; and the misdiagnosis "caused a delay in petitioner receiving the appropriate treatment and care." Finally, Mr. Breaux asserted the loss of a chance of a more favorable outcome doctrine as an additional theory of negligence and recovery. As to Ochsner, Mr. Breaux averred that Dr. Jones and Dr. Suri were acting within the course and scope of their employment and thus Ochsner was vicariously liable for their alleged negligent actions pursuant to the respondeat superior theory.

After answering the petition and engaging in discovery, Physicians filed a summary judgment motion, which Mr. Breaux opposed. At the outset of the hearing on the summary judgment motion, Mr. Breaux's counsel conceded that there was no genuine issue of material fact precluding summary judgment, regarding the allegations of malpractice asserted against Dr. Suri, individually, as well as any independent allegations of malpractice asserted against Ochsner concerning any employee other than Dr. Jones. The summary judgment hearing focused solely on the liability of Dr. Jones and Ochsner as his employer.

Further cabining the issues presented, Physicians, at the summary judgment hearing, agreed that neither the standard of care nor Physicians' breach of the standard of care would be contested for purposes of the motion. Rather,

Physicians' position was that they were entitled to summary judgment because Mr. Breaux could not establish the assumed breach of the standard of care medically caused him any damage or worsened the outcome.

In support of their argument, Physicians pointed out that Mr. Breaux, in his discovery responses, identified two experts to testify that Dr. Jones breached the applicable standard of care by failing to recognize evidence of a fibular fracture on diagnostic imaging obtained on July 30 and 31, 2017, thereby leading to a delay in the diagnosis of this injury until August 14, 2017. But neither of Mr. Breaux's experts testified, when deposed, that Mr. Breaux sustained any physical harm or damages as a result of the delayed diagnosis, that the fibular fracture worsened during the delay, or that the ultimate outcome of this case was altered in any way due to the delayed diagnosis. Agreeing with Physicians, the trial court granted the summary judgment motion and dismissed the suit.

This appeal followed.

## DISCUSSION

Mr. Breaux assigns as error the trial court's grant of the summary judgment motion based on its finding that he suffered no damages as a result of Physicians' misdiagnosis of his fractured fibula as a contusion.

*Summary Judgment Precepts and Standard of Review*

A ruling on a motion for summary judgment is reviewed using a *de novo* standard. *Planchard v. New Hotel Monteleone, LLC*, 21-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). An appellate court uses the same standards

4

and rules as a trial court in deciding whether summary judgment is appropriate—
"whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Id.*, 21-00347, pp. 2-3, 332 So.3d at 625.

Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).[3] The burden of proof on a summary judgment motion is governed by La. C.C.P. art. 966(D)(1), which provides for a shifting burden of proof.[4]

The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to decide if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n*, 19-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (citation omitted).

A genuine issue of fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on

---

[3] The Louisiana Legislature amended La. C.C.P. art. 966, effective August 1, 2023. The amendment to this article, however, is not applicable to this appeal.

[4] La. C.C.P. art. 966(D)(1) as follows:

> [I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

the issue, and the granting of summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (citation omitted). A material fact is one that "might affect the outcome of the suit." *Id.* Whether a fact is material must be determined based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citation omitted).

Because this is a medical malpractice case against private providers, the applicable substantive law is La. R.S. 9:2794(A).[5] "To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury." *Samaha v. Rau*, 07-1726, pp. 5-6 (La. 2/26/08), 977

---

[5] La. R.S. 9:2794(A) provides:

In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., . . . the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

So.2d 880, 883-84 (citing La. R.S. 9:2794). Here, the sole issue is whether there is a genuine issue of material fact as to third element—causation and damages.

*Genuine Issue of Material Fact Regarding Causation*

Physicians' summary judgment motion was based on the absence of any expert testimony to establish that Dr. Jones' delayed diagnosis (misdiagnosis)—uncontested by Physicians for purposes of the summary judgment motion—caused any injury or an adverse outcome. Mr. Breaux contends, contrary to Physicians' contention and the trial court's finding, that expert testimony is not required to establish he suffered pain and suffering as a result of the misdiagnosis. He contends that the connection between the misdiagnosis and his increased leg pain falls within the "common-knowledge" exception to the expert testimony rule. According to Mr. Breaux, it is common sense that he endured pain and suffering because of the delay in diagnosis of his fractured fibula, particularly considering that he was required to participate in exercises, training, and practice as a National Football League ("NFL") player. But even if the court determines that it is not common sense, Mr. Breaux contends that the record is replete with specific facts pointing to his pain and suffering.

Countering, Physicians contend that the allegations of medical negligence asserted against them by Mr. Breaux are not of the type that are so egregious or obvious that causation can be inferred under the circumstances without expert testimony. Stated otherwise, Physicians' position is that the common-knowledge exception to the expert testimony requirement is inapposite here.

Before reaching the issue regarding the need for expert testimony, we first address the issue of whether the nature of this case—involving an NFL player, as the plaintiff patient, and a team doctor as the defendant—is a relevant factor and whether a claim for misdiagnosis is limited to cases in which the patient sustains a physical injury or an adverse medical outcome as a result of the misdiagnosis. We, thus, divide our analysis into three sections—nature of the case; nature of misdiagnosis claim; and "common-knowledge" exception to expert testimony requirement.

**Nature of the case**

At the summary judgment hearing, the issue of whether the nature of the case is a relevant factor was raised. Physicians' counsel argued that this is simply an ordinary medical malpractice case. In support, Physicians' counsel cited the expert testimony that the standard of care owed to Mr. Breaux is the same as it would be to any other medical-malpractice plaintiff. Countering, Mr. Breaux's counsel argued that this case could not be categorized or considered as a normal medical malpractice case. In support, Mr. Breaux's counsel pointed out that in normal medical malpractice cases, the patient does not have an x-ray, a MRI, and a CT scan within days of the injury. And, had Mr. Breaux been diagnosed correctly, he would have undergone surgery within days.

We find, as Mr. Breaux contends, that the nature of this case—an NFL player, as the plaintiff-patient, and a team doctor as the defendant—is a relevant factor. *See Wilson v. Prusmack*, 08CV10376 (Colo.Dist.Ct. May 6, 2001) (*unpub.*),

8

2011 WL 3791780.[6] We also note that the MRP, in this case, considered this a relevant factor; the MRP stated in its opinion that "[t]he treatment plan and return to the sport was timely and appropriate for a professional athlete." Moreover, as discussed elsewhere in this opinion, the circumstances of the case are one of three

---

[6] In the *Prusmack* case, the district court denied a summary judgment motion filed by the defendant—an NFL team doctor—seeking to dismiss a similar type claim. The plaintiff-patient in that case was a Denver Broncos's football player. The player's claim was that the team doctor misdiagnosed a spinal cord injury that the player sustained during a professional game. The team doctor's summary judgment motion was based on the argument that the scope of any duty the doctor owed the player did not extend to offering advice or treatment on how to preserve the player's NFL career. In the alternative, the doctor asserted the absence of a genuine issue of fact as to causation and that the player's damage claims were too speculative to survive summary judgment. Denying the doctor's summary judgment motion, the district court judge observed:

> [T]he medical professional at issue was acting as the consulting neurosurgeon to an NFL team. This role contemplates some obligation to provide medical care that accounts for the player's specific line of work. A physician who chooses to consult for an NFL team may be presumed to have some understanding of the physical demands placed on players and the scrutiny to which a player's health is subjected in evaluating whether they may continue to earn a living playing in the NFL. *Cf.* M. Mitten, "Team Physicians and Competitive Athletes: Allocating Legal Responsibility For Athletic Injuries," 55 U. Pitt. L. Rev. 129, 147 (discussing standard of care, not duty, but observing: "In providing medical care to a competitive athlete, the team physician should adhere to accepted sports medicine standards under the circumstances. The level of competition at which an athlete is playing appears to be a relevant factor in determining the accepted medical practice. Professional and college players receive more comprehensive medical examinations because of the extreme physical demands of these levels of play and the economic ability of teams to pay for extensive examinations.") Accordingly, the scope of the duty in this instance encompasses the responsibility to advise a player about basic treatment options which may affect the player's ability to continue in his chosen profession.

> Defendant is correct that even in the sports medicine environment the physician's primary, if not singular, concern should be the medical treatment of the patient and not getting the player back on the field or worrying about how long he will be able to play at an elite level. Even if I am therefore wrong to predicate the scope of the duty on the peculiar nature of this physician/patient-athlete relationship, the overarching obligation to provide any patient with treatment options still exists. This general obligation also suffices to defeat Defendant's bid for summary judgment.

> I conclude a legal duty exists and the scope of that duty reaches the conduct about which Plaintiff complains.

> The other questions which the parties take up in the pleadings are more easily resolved. Genuine issues of material fact remain as to causation. The damages sought are not so speculative as to justify summary judgment.

ways in which general damages may be established. *Jones v. Capitol Enters., Inc.*, 11-0956, pp. 46-47 (La. App. 4 Cir. 5/9/12), 89 So.3d 474, 506 (citation omitted). Thus, we consider the nature of the case a relevant factor.

**Nature of Misdiagnosis Claim**

As a commentator has observed, a patient can claim that a misdiagnosis injured a patient in one or more of the following three situations:

> (1) the erroneous or delayed diagnosis may lead to injurious delay in treatment or even in a fatal failure to treat;

> (2) the patient may be injured by being given the wrong advice or treatment on diagnostic errors or absence of diagnosis; or

> (3) the mere fact that the erroneous diagnosis is made and conveyed to plaintiff or to others may result in injury to the plaintiff.

Stuart M. Speiser, *et al.*, 4 AMERICAN LAW OF TORTS § 15:23 (March 2023 Update).

Here, Physicians seek to cabin a misdiagnosis claim to the first two situations. They suggest that a misdiagnosis claim is confined to cases in which the patient sustains a physical injury or an adverse medical outcome as a result of the misdiagnosis. But, the third situation is the principal basis on which Mr. Breaux hinges his misdiagnosis claim—an injury due to the conveying of an erroneous diagnosis to him and to others. According to Mr. Breaux, the others to whom the information was conveyed were his employer (the New Orleans Saints team), the team's trainers, and the team's coach. The others, in turn, expected Mr. Breaux to perform at pre-season training camp based on the misdiagnosis of his leg injury as a bone contusion.

*"Common-Knowledge" Exception to Expert Testimony Requirement*

In granting summary judgment, the trial court, agreeing with Physicians' argument, found that the lack of expert testimony to establish a causal connection between Dr. Jones' assumed misdiagnosis and any injury to Mr. Breaux was dispositive. Mr. Breaux contends that the causal connection between the misdiagnosis and his increased leg pain falls within the "common-knowledge" exception to the expert testimony rule.

The "common-knowledge" exception is defined as "[t]he principle that lay testimony concerning routine or simple medical procedures is admissible to establish negligence in a medical-malpractice action"; and as "a narrow exception in some jurisdictions to the rule that a medical-malpractice plaintiff must present expert testimony to establish negligence." *Common-Knowledge Exception*, BLACK'S LAW DICTIONARY (11th ed. 2019). This exception is recognized in Louisiana. *See Pfiffner v. Correa*, 94-0924, 0963, 0992, pp. 9-10 (La. 10/17/94), 643 So.2d 1228, 1234.

The Louisiana Supreme Court, in *Pfiffner*, explained the exception as follows:

> [T]here are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof.

*Id.* The jurisprudence has also recognized that the exception extends to establishing causation. *Rogers v. Hilltop Ret. & Rehab. Ctr.*, 13-867, p. 8 (La. App. 3 Cir.

2/12/14), 153 So.3d 1053, 1060 (citing *Pfiffner* and observing that "[e]xpert testimony is also required to establish causation unless the causal connection between the breach of the standard and the plaintiff's damages are obvious").

The "common-knowledge" exception "does not give the members of the medical profession a monopoly on common sense, and the [exception] is limited to those matters clearly within the domain of medical science." *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22, 25 (1978). Three elements are required to invoke the common-knowledge exception:

1) the plaintiff has asserted a claim of medical malpractice;

2) the care or result of the care is patently bad; and

3) a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony.

*Hubbard v. Mellion*, 48 Kan.App.2d 1005, 1015; 302 P.3d 1084, 1093 (2013).

Given Physicians, for purposes of the summary judgment motion, did not contest the misdiagnosis, only the third element is in dispute. A case cited by Mr. Breaux—*Ainsworth v. Am. Home Assurance Co.*, 17-0778 (La. App. 4 Cir. 2/21/18), 239 So.3d 359—is instructive in determining whether the third element is satisfied.

In *Ainsworth*, the plaintiff was a deceased patient's daughter; the defendant was Touro Hospital. The suit stemmed from the conditions at Touro Hospital in the aftermath of Hurricane Katrina. Those conditions were alleged to have caused the decedent to sustain temporary pain and suffering while at the hospital following

the hurricane—the survival claim—and decedent's death—the wrongful death claim. We divided our analysis of the plaintiff-daughter's claims into two separate categories—survival and wrongful death claims. We concluded that "the issue of whether the principal conduct about which [the plaintiff-daughter] complains caused [her mother] temporary pain and suffering falls within the knowledge and experience of the average lay person." *Ainsworth*, 17-0778, pp. 10-11, 239 So.3d at 365. Conversely, we concluded that the plaintiff-daughter could "only properly challenge Touro's conduct as having caused her mother's death [her wrongful death claim] through expert testimony." *Id.*

Explaining our different treatment of the survival and wrongful death claims, we observed that "whether Touro's alleged negligent acts exacerbated [the decedent's] pre-existing condition and/or contributed to or caused [the decedent's] death is beyond the province of lay persons to assess; and therefore, [plaintiff-daughter] must proffer expert testimony as to her wrongful death claim." *Ainsworth*, 17-0778, pp. 12-13, 239 So.3d at 366. In contrast, we observed that a different outcome was warranted as to the decedent's temporary pain and suffering claim—the survival claim; we observed:

> [Plaintiff-daughter] alleges that because of Touro's actions and inactions, her mother experienced physical and emotional symptoms of dehydration, overheating, exhaustion, mental anguish, fear, stress, anxiety, and depression. The question is whether the admitted failures of Touro, if proven at trial, are so obvious that a lay person could rely on their common knowledge without the aid of expert testimony to determine the harm, if any, resulting to [Plaintiff-daughter's] mother. This Court has held that "[g]eneral damages for pain and suffering may be established in three ways: (i) the circumstances of the case, (ii) expert medical testimony, and (iii) the tort victim's testimony." *Jones v. Capitol Enterprises, Inc.*, 11-0956, p. 46-47 (La. App. 4 Cir. 5/9/12),

89 So.3d 474, 506 (citing Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7–2(c)(1996) ). We find that the physical and emotional symptoms [Plaintiff-daughter] claims her mother suffered are within the common knowledge of an average lay person or trial court to understand. *Id.*, 11-0956, p. 46, 89 So.3d at 506-07 (finding plaintiffs' claims for physical symptoms were "not esoteric" problems that required expert testimony). Given the facts presented, we find medical expert testimony is not required to establish causation for temporary pain and suffering.

*Ainsworth*, 17-0778, pp. 10-12, 239 So.3d at 365-66.

Mr. Breaux contends that, as in *Ainsworth*, his pain and suffering is not an "esoteric problem" that requires expert testimony. According to Mr. Breaux, the average lay person certainly understands that running on a fractured leg increases the pain. He contends, as a matter of common sense, it can be inferred that living with a broken fibula for two-plus weeks is painful. Mr. Breaux emphasizes that he has presented significant evidence to establish his pain and suffering. Indeed, he points out he has presented evidence falling within two of the three categories identified in the *Jones* case—the circumstances of the case and his own testimony. We find this argument persuasive.

Our finding is buttressed by the Louisiana Supreme Court's holding in *Estate of Adams v. Home Health Care of La.*, 00-2494, pp. 1-2 (La. 12/15/00), 775 So.2d 1064. There, the defendant, Home Health Care of Louisiana ("HH"), was alleged to be negligent both in failing to properly care for the plaintiff at home after an extensive period of hospitalization and in failing to call the attending doctor when the plaintiff's condition worsened. For purposes of its summary judgment motion, HH did not contest its negligence. Rather, HH contended that the amputation of the plaintiff's foot would have been required regardless of its

14

negligence. HH further contended that the plaintiff had no expert witness to establish the causal connection between its negligence and the amputation. The trial court granted HH's summary judgment motion; the appellate court, with one dissent, affirmed. Granting writs and reversing the lower courts, the Supreme Court observed:

> As the dissenting judge on the intermediate court noted, the admitted negligence clearly caused some damages, even if it merely hastened the amputation by one day. Plaintiff's damages for pain and suffering during the period of negligence, for aggravation of her medical condition, and for loss of any chance of saving her foot or of delaying the amputation is more appropriately decided by trial on the merits, even if plaintiff's case regarding the amount of damages is considerably weakened by the dearth of expert testimony.

*Estate of Adams*, 00-2494, pp. 1-2, 775 So.2d at 1064-65. The Supreme Court, thus, implicitly rejected the need for expert testimony to withstand summary judgment on a claim for pain and suffering arising out of a medical provider's uncontested negligence. Such is the case here.

Recapping, all three requirements for the application of the "common-knowledge" exception are met here. First, Mr. Breaux's suit asserts a claim for medical malpractice. Second, Physicians, for purposes of the summary judgment motion, did not contest the misdiagnosis. Third, a lay person can attribute Mr. Breaux's alleged injury to the wrongful conduct without the aid of expert testimony. Accordingly, we find the trial court erred in granting Physicians' summary judgment motion.

## DECREE

For the foregoing reasons, the trial court's November 21, 2022 judgment is reversed; and this matter is remanded.

15

**REVERSED AND REMANDED**